THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COMMERCE COMMERCIAL PARTNERS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MILLIKEN & COMPANY, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 4:22-cv-00020-DN<br><br>District Judge David Nuffer |

This lawsuit arises from a commercial tenant's alleged breach of a Lease Agreement for an industrial building. Specifically, Commerce Commercial Partners ("CCP") sued its former tenant, Milliken & Company ("Milliken"), and alleges Milliken: (1) damaged CCP's property and fixtures on the Leased Property; (2) forced CCP to forgo two months of rent with a new tenant because CCP needed to complete extensive repairs on the Leased Property; and (3) caused CCP to incur attorney's fees by refusing to pay for some of its obligations under the Lease Agreement. CCP alleges Milliken refused to reimburse CCP for these costs as required by the Lease Agreement.

Milliken's Motion for Partial Summary Judgment argues that some of CCP's claims for breach of contract, waste, and breach of covenant of good faith and fair dealing should be dismissed.[1] CCP filed a Response in opposition, and Milliken filed a Reply.[2] Additionally, on

---

[1] Defendant's Motion for Partial Summary Judgment ("Milliken's Motion"), docket no. 46, filed July 21, 2023.

[2] Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment ("CCP's Response"), docket no. 51, filed August 25, 2023; Defendant's Amended Replay in Support of Motion for Summary Judgment ("Milliken's Reply"), docket no. 59, filed September 11, 2023.

January 17, 2024, the parties were ordered to file supplemental briefs that analyzed one of the lease provisions that pertained to attorney's fees, and the parties each filed a supplemental brief on attorney's fees.[3]

A.      UNDISPUTED MATERIAL FACTS  ......................................................................... 3
        Leased Premises.......................................................................................................... 3
        Relevant Provisions of the Milliken Lease Agreement ................................................ 4
        Installation and Removal of Mechanical Units............................................................ 5
        Mezzanine and Tilt-Up Repairs .................................................................................. 7
        Property Tax Reimbursement ...................................................................................... 7
        Roof Repairs ............................................................................................................... 8
        Conduit Loan .............................................................................................................. 8
        Rent Abatement .......................................................................................................... 8
B.      LEGAL STANDARDS ........................................................................................... 12
        Summary Judgment Standard .................................................................................... 12
        Substantive Legal Standards ..................................................................................... 13
                1.      Breach of Contract ........................................................................... 13
                2.      Waste................................................................................................ 14
                3.      Breach of the Implied Covenant of Good Faith and Fair Dealing........... 14
                4.      Damages............................................................................................ 15
                5.      Attorney's Fees ................................................................................ 16
C.      DISCUSSION.......................................................................................................... 16
                1.      The parties agree that the defeasance claim for more than $644,000  has
                        been withdrawn................................................................................. 16
                2.      The parties agree that Milliken repaid CCP for the costs related to the tilt-
                        up repairs, mezzanine repairs, and property taxes ..................................... 17
                3.      Milliken is entitled to summary judgment for  CCP's roof repair claims
                        because CCP did not provide any evidence of damages........................... 17
                4.      Milliken is not entitled to summary judgment on CCP's rent abatement
                        claim because there are disputes as to several material facts for this claim
                        ........................................................................................................... 19
                5.      Milliken is entitled to summary judgment on CCP's claim for costs to
                        replace the mechanical units, but summary judgment cannot be entered
                        against the claim for the costs to remove the mechanical units from the
                        Leased Premises................................................................................. 20
                6.      Milliken is entitled to summary judgment on CCP's claims for attorney's
                        fees and the cost of collection that CCP incurred pursuing the roof repair
                        claim and the mechanical units claim, but not for pursuing any other claim
                        ........................................................................................................... 22
D.      ORDER ..................................................................................................................... 27

---

[3] Docket Text Order, docket no. 66, filed January 17, 2024; CCP Supplemental Brief, docket no. 67, filed January 26, 2024;  Milliken Supplemental Brief, docket no. 68, filed January 26, 2024.

### A.  UNDISPUTED MATERIAL FACTS[4]

### Leased Premises

1.      CCP is a landlord for commercial properties, and CCP constructed an industrial building ("Leased Premises") in Ft. Pierce Industrial Park in St. George, Utah, in or around 2004.[5]

2.      Milliken was the commercial tenant of the Leased Premises from May 9, 2006, until May 31, 2021, which was approximately 15 years.[6] Milliken's lease for the Leased Premises ("Milliken Lease Agreement") was renewed in 2010 and 2016.[7]

3.      In 2019, Milliken notified CCP that it would not renew its lease, and the final day under the Lease Agreement would be May 31, 2021.[8]

4.      In February 2020, CCP signed a new lease with a new tenant (the "Czarnowski Lease") in which CCP committed to lease the premises to Czarnowski starting on June 1, 2021.[9]

---

[4] The following Undisputed Material Facts are taken from the parties' briefs. Where a footnote does not refer to CCP's Response, CCP did not respond to an alleged fact. Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, some of these Undisputed Material Facts may not be material to the disposition of the parties' motions, but are nevertheless included to give background and context to the issues raised in the motions. The facts have been restated in some instances.

[5] Milliken Motion, docket no. 46, ¶1 at 7, filed July 21, 2023.

[6] Milliken Motion, docket no. 46, ¶2 at 7, ¶6 at 9; CCP's Response at 2.

[7] Milliken Motion, docket no. 46, ¶7 at 9; Exhibit C, 2010 and 2016 Lease Extensions, docket no. 46-3, filed August 25, 2023.

[8] Milliken Motion, docket no. 46, ¶8 at 9.

[9] Milliken Motion, docket no. 46, ¶9 at 9.

### Relevant Provisions of the Milliken Lease Agreement

5.      The Lease Agreement states:

**SECTION 8. Taxes:** Tenant is responsible for the payment of real estate taxes in respect of the Premises during the term of this Lease, or its pro rata share thereof for any portion of a year during which time the Premises is subject to the possession of Tenant pursuant to the terms of this Lease[.]

**SECTION 14. Alterations:** After assuming occupancy of the Premises, Tenant may, with the written consent of Landlord, which consent shall not be unreasonably withheld, make at Tenant's own cost and expense such alterations, changes, replacements and additions in and to the Premises, as Tenant may deem necessary or desirable for the conduct of its business, provided that the structural integrity of the Facility shall not thereby be impaired. . . . Upon the termination of this Lease, all such alterations, changes, replacements and additions made by Tenant shall, at the option of Tenant, become the property of Landlord or be removed by Tenant.

**SECTION 16. Tenant Repairs and Maintenance**: . . . subject to the obligations of Landlord contained herein, Tenant shall maintain the fixtures, equipment and appurtenances thereon, and at its sole cost and expense, make all repairs of any nature thereto as and when needed to preserve the Premises in good condition. . . . If Tenant should default in performance of Tenant's obligations under this Paragraph, and such default continues for more than thirty (30) days after receipt by Tenant or written notice of such default from Landlord, which notice shall specify in detail the nature of the default, Landlord may perform Tenant's obligations under this section and any amount so expended shall be deemed additional rent due Landlord under this Lease.

**SECTION 17.  Landlord Obligations:** During the term of this Lease and any extensions thereof, Landlord shall, at Landlord's sole cost and expense, maintain in good order and repair the exterior and structural supports of the Facility, including without limitation the . . . roof [and] . . . structural supports . . . ordinary wear and tear expected; provided however, that Landlord shall have no such obligation or liability of any kind for foundation problems or deficiencies cause by Tenant[.]

**Section 18. Condition Upon Termination:** On the last day of the term of this Lease . . . Tenant shall quit and surrender the Premises and the improvements then remaining thereon, and Tenant shall leave the Premises and any improvements in operable, clean and good condition, ordinary wear and tear excepted.

**SECTION 19. Removal of Fixtures:** Tenant may remove all equipment, fixtures and personal property which Tenant has placed upon the Premises, provided Tenant will repair all damages to the Premises caused by such removal. Following termination of this Lease, any property remaining in or upon the Premises at the option of Landlord, may

either be deemed to become Landlord's property or Landlord may dispose of such property as Landlord deems proper with no obligations to Tenant.

**SECTION 29. Default**: In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord, a late fee equal to ten (10%) percent of the amount past due shall be assessed and shall become immediately due. . . .

In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not.[10]

### Installation and Removal of Mechanical Units

6.      After the inception of the Lease Agreement, Milliken installed several swamp coolers and HVAC Units ("Milliken Units") on the roof of the Leased Premises.[11]

7.      Sections 14 and 18 of the Lease Agreement permitted Milliken to leave "alterations" or "fixtures" that it added to the Leased Premises.[12]

8.      Section 18 of the Lease Agreement states the tenant: "shall leave the Premises and any improvements in operable clean and good condition, ordinary wear and tear expected."[13]

---

[10] CCP's Exhibit 1, Commercial Lease Agreement, docket no. 2-1, at 4, 5, 8, filed March 29, 2022.

[11] Milliken Motion, docket no. 46, ¶12, at 10; *see also* Milliken's Exhibit A, Deposition of Representative of CCP, docket 46-1, at 106:20-107:3, filed July 21, 2023.

[12] Milliken Motion, docket no. 46, ¶13 at 10; *see also* CCP Response, docket no. 51, at 3. CCP asserts that it is disputing this fact, but CCP is really disputing that the Lease Agreement permitted Milliken to leave the fixtures in poor condition. *See* CCP Response, docket no. 51, at 3. Milliken's Statement No. 13 did not assert the Lease Agreement permitted Milliken to leave fixtures in poor condition on the premises. Therefore, this fact, as stated in Milliken's Statement No. 13, is deemed admitted.

[13] CCP Response, docket no. 51, at 3, 9.

9.      Section 14 of the Milliken Lease Agreement also states that the landlord must consent to alterations or modifications to the premises in writing.[14] CCP approved some alterations in writing, but it did not approve other alterations in writing.[15]

10.     Milliken left the Milliken Units (i.e., swamp coolers and HVAC units) on the Leased Premises after the end of the lease.[16]

11.     CCP hired Paxman Heating and Cooling ("Paxman") to inspect the Leased Premises at the end of Milliken's lease, and Paxman recommended that the swamp coolers be replaced.[17]

12.     CCP and Paxman did not try to repair the swamp coolers or HVAC units before CCP decided to install new swamp coolers and HVAC units in their place.[18] CCP and Paxman did not check the operational condition the swamp coolers and HVAC units before removing and replacing the units.[19]

13.     Paxman drafted a letter dated May 20, 2021, that stated the swamp coolers were "extremely beat up" with missing doors and tops on all but one of the coolers.[20]

---

[14] CCP Response, docket no. 51, at 3-4.

[15] CCP Response, docket no. 51, at 4.

[16] Milliken Motion, docket no. 46, ¶15 at 10.

[17] CCP Response, docket no. 51, at 5; Milliken's Exhibit 7, Paxman Inspection Report, docket no. 46-7, filed July 21, 2023.

[18] Milliken Motion, docket no. 46, ¶20 at 11; CCP Response, docket no. 51, at 6. CCP stated that it was disputing this fact, but CCP did not dispute this fact. Instead, CCP asserted additional facts. *See* CCP Response, docket no. 51, at 6. Therefore, this fact, as stated in Milliken's Statement No. 20, is deemed admitted.

[19] Milliken Motion, docket no. 46, ¶21 at 11; CCP Response, docket no. 51, at 5-6. CCP stated that it was disputing this fact, but CCP failed to dispute this fact. *See* CCP Response, docket no. 51, at 5-6. Instead, CCP asserted additional facts for the mechanical units. CCP failed to assert a legitimate justification for its dispute, and the fact, as stated in as stated in Milliken's Statement No. 21, is admitted.

[20] CCP Response, docket no. 51, at 5; *see* Milliken Motion, docket no. 46, ¶22 at 11; Milliken's Exhibit F, Inspection Report, docket no. 46-7, filed July 21, 2023.

14.     The new tenant, Czarnowski, wanted swamp coolers on the Leased Premises.[21]

15.     CCP seeks to charge Milliken for the replacement and removal costs of the

Milliken Units, which is more than $100,000.[22]

### Mezzanine and Tilt-Up Repairs

16.     Milliken repaid CCP all of costs for the Mezzanine and Tilt-Up repairs.[23]

17.     CCP's claim for Mezzanine and Tilt-Up Repairs is limited to the attorneys' fees

and the cost of collection that were incurred by CCP to induce Milliken to pay for these repairs.[24]

### Property Tax Reimbursement

18.     Milliken reimbursed CCP $19,098.48 for all the property taxes it owed CCP.[25]

19.     Section 8 of the Lease Agreement states: "Tenant is responsible for the payment

of real estate taxes in respect of the Premises during the term of this Lease[.]"[26]

20.     CCP's claim for Property Tax Reimbursement is limited to the attorneys' fees and

the cost of collection that were incurred by CCP to induce Milliken to reimburse CCP for the

property taxes.[27]

---

[21] CCP Response, docket no. 51, at 6; Milliken Motion, docket no. 46, ¶19 at 11.

[22] Milliken Motion, docket no. 46, ¶27 at 12; *see also* Milliken's Exhibit I, Mechanical Units Charges, docket no. 46-10; CCP Response, docket no. 51, at 9.

[23] Milliken Motion, docket no. 46, ¶55 at 16; CCP Response, docket no. 51, at 19-21, 38-39. For the mezzanine and tilt-up repairs, CCP denied it received full reimbursement for these repairs because Milliken did not pay the cost of collection and attorney's fees incurred to induce Milliken to pay for these repairs. *See* CCP Response, docket no. 51, at 19-21. The cost of repairs and attorneys' fees are separate claims that involve different provisions from the Lease Agreement and different substantive law. For this reason, this Memorandum Order and Decision separated the attorney's fees and cost of collection into a separate claim. Additionally, because CCP did not dispute Milliken's claim that Milliken fully repaid the mezzanine and tilt-up repairs, this fact is deemed to be admitted.

[24] CCP Response, docket no. 51, at 19-21, 38-39.

[25] Milliken Motion, docket no. 46, ¶58 at 16; CCP Response, docket no. 51, at 22.

[26] Milliken's Exhibit B, Lease Agreement, docket no. 46-2, at 2, filed July 21, 2023.

[27] Milliken Motion, docket no. 46, ¶58 at 16; CCP Response, docket no. 51, at 22.

### Roof Repairs

21.     During the leasing period, Milliken penetrated the roof for the installation of swamp coolers and HVAC units.[28]

22.     CCP replaced the entire roof, and CCP believes that Milliken should be responsible for a cost of "a portion of the cost to replace the roof."[29]

23.     Section 17 of the Lease Agreement states CCP is responsible for: "maintain[ing] in good order and repair the exterior and structural supports of the [Premises], including . . . the . . . roof . . . however [CCP] shall have no such obligation or liability of any kind for . . . deficiencies caused by Tenant[.]"[30]

### Conduit Loan

24.     CCP alleged in its Rule 26 disclosures that it incurred $644,000 in costs it incurred to defease a conduit loan.[31]

25.     CCP later withdrew this claim.[32]

### Rent Abatement

26.     In 2019, Milliken notified CCP that it would not renew its lease with CCP for the Leased Premises.[33]

27.     In February 2020, CCP signed a new lease with a new tenant ("the Czarnowski Lease"), and CCP committed to lease the premises to Czarnowski starting on June 1, 2021.[34]

---

[28] CCP Response, docket no. 51, at 22-23.

[29] CCP Response, docket no. 51, at 24.

[30] CCP Response, docket no. 51, at 22-23; Milliken's Exhibit B, Lease Agreement, docket no. 46-2, at 5, filed July 21, 2023.

[31] Milliken Motion, docket no. 46, ¶59 at 16.

[32] Milliken Motion, docket no. 46, ¶60 at 16; CCP Response, docket no. 51, at 4.

[33] Milliken Motion, docket no. 46, ¶8 at 9.

[34] Milliken Motion, docket no. 46, ¶9 at 9.

28.     Czarnowski was not able to use the whole plant area for its intended purposes until after August 18, 2021, when the concrete floors were repaired.[35] The floors of the Leased Premises needed significant repairs because there were holes and bolts in the floors.[36] Czarnowski needed flat floors because it used the Leased Premises as a warehouse and it stacked freight 26-feet high.[37]

29.     CCP agreed to provide Czarnowski with two months of rent abatement, which is valued at $115,301.03.[38]

30.     Section 3.3 of the Czarnowski Lease states: "each day beyond the June 1, 2021, that the Lessor fails to deliver possession of the Premises to Lessee, the rent shall be abated an additional two (2) days[.]"[39]

31.     Section 3.3 of the Czarnowski Lease also states: "If possession is not delivered within 60 days after the Commencement Date . . . Lessee may, at its option, by notice in writing within 10 days after the end of such 60-day period, cancel this Lease[.]"[40]

32.     The Czarnowski Lease contains a provision that requires that CCP "shall ensure that all equipment, including but not limited to, HVAC . . . shall be in good operating or new condition."[41]

33.     CCP's contractor failed to order new mechanical units (including HVAC units and swamp coolers) for the Leased Premises until early June 2021, which is after the Czarnowski

---

[35] CCP Response, docket no. 51, at 25.

[36] CCP Response, docket no. 51, at 25.

[37] CCP Response, docket no. 51, at 25.

[38] Milliken Motion, docket no. 46, ¶73 at 18; CCP Response, docket no. 51, at 32; Complaint, docket no. 2, at 9, filed March 29, 2022.

[39] CCP's Exhibit 19, Czarnowski Lease, docket no. 52-8, at 3; CCP Response, docket no. 51, at 28.

[40] CCP's Exhibit 19, Czarnowski Lease,  docket no. 52-8, at 3; Milliken Motion, docket no. 46, ¶8 at 10.

[41] Milliken Motion, docket no. 46, ¶68 at 17;  CCP's Exhibit 19, Czarnowski Lease,  docket no. 52-8, at 2.

Lease began.[42] These mechanical units were installed in August 2021 and the last mechanical unit was installed in October 2021.[43]

34.     The fluorescent lighting fixtures that hung from the ceiling needed to be removed so Czarnowski could stack freight on the Leased Premises. Initially, Milliken agreed to remove the florescent lighting from the ceiling, but Milliken failed to timely remove the lighting and Watts Construction removed the fixtures after June 1, 2021.[44]

35.     Milliken sold its equipment from the Leased Premises to Gibbs International for $2.5 million.[45] Milliken had contracted with Gibbs to remove the equipment from the Leased Premises by June 30, 2020.[46] Later, Milliken and Gibbs negotiated an extension for Gibbs to remove the equipment by the end of December 2020 or at the start of January 2021, and Gibbs would pay Milliken a portion of its rent for this extension.[47] Gibbs removed the equipment at the end of December 2020 or the beginning of January 2021.[48]

36.     Milliken gave CCP full 24/7 access to the Leased Premises on February 3, 2021, so CCP could complete its repairs.[49]

37.     CCP's contractors were not able to complete repairs of the premises until October 2021.[50]

---

[42] Milliken Motion, docket no. 46, ¶69 at 17.

[43] Milliken Motion, docket no. 46, ¶69 at 17; CCP Response, docket no. 51, at 24.

[44] CCP Response, docket no. 51, at 25.

[45] CCP Response, docket no. 51, at 15.

[46] CCP Response, docket no. 51, at 15.

[47] CCP Response, docket no. 51, at 23.

[48] CCP Response, docket no. 51, at 15.

[49] CCP Response, docket no. 51, at 14.

[50] CCP Response, docket no. 51, at 16.

38.     CCP's contractor from Watts Construction kept a photographic journal of the repairs completed at the Leased Premises.[51] Watts did not complete several of the repairs until after June 2020, such as: (1) removing transformers from columns on August 4, 2021; (2) repairing and replacing southwest dock door August 9, 2021; (3) removing conduit and repairing holes in the north wall on July 29, 2021; (4) disconnecting unused transformers by air compressors on July 30, 2021; (5) grinding bolts on the loading dock on August 31, 2021; (6) removing electrical conduits on the east wall on August 21, 2021; and (7) removing material from the air compressor yard north of the electrical room.[52]

### Attorneys' Fees

39.     In June 2020, CCP retained counsel to assess the repairs and Milliken's obligation to reimburse CCP for these expenses.[53]

40.     Prior to hiring counsel, CCP attempted to get a restoration plan and timeline from Milliken in late 2019 and early 2020 on at least four occasions.[54]

41.     CCP incurred attorney's fees to collect reimbursement from Milliken for the mezzanine repairs, tilt-up repairs, property taxes, and other costs.[55]

---

[51] CCP Response, docket no. 51, at 16; CCP's Exhibit 23, Photographic Journal of Repairs, docket no. 53-2, filed August 25, 2023.

[52] CCP Response, docket no. 51, at 10-11, 16; CCP's Exhibit 24, Punch List with Completion Dates, docket no. 54-1; Milliken Motion, docket no. 46, ¶35 at 13.

[53] Milliken Motion, docket no. 46, ¶29 at 12. CCP asserts this fact is disputed because CCP's counsel was retained to enforce the Lease Agreement. *See* CCP response, docket no. 51, at 10-11. However, this is not a genuine disputed fact because CCP's counsel needed to assess Milliken's obligation to reimburse CCP for repairs so counsel could enforce the Lease Agreement. Therefore, this fact, as stated in Milliken's Statement No. 29, is admitted.

[54] CCP response, docket no. 51, at 11, 14.

[55] CCP Response, docket no. 51, at 19-22.

42.     CCP's counsel sent thirty-day demand notices to Milliken to repair the Leased Premises on July 14, 2020; March 18, 2021; and April 8, 2021.[56] CCP also provided Milliken with a ten-day notice with a final repair cost and payment demand.[57]

43.     Milliken made payments to CCP for repairs to the premises after CCP incurred attorney's fees and costs to enforce the conditions of the lease.[58]

44.     Section 29 of the Lease Agreement states: "In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees[.]"[59]

45.     Milliken has never paid any funds towards CCP's costs of collection, including attorney's fees.[60]

## B.  LEGAL STANDARDS

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[61] or "if a

---

[56] CCP response, docket no. 51, at 10-11; CCP's Exhibit 8, CCP's July 14, 2020, Demand Letter, docket 51-8, filed August 25, 2023; CCP's Exhibit 9, CCP's March 18, 2021, Demand Letter, docket no. 51-9, filed August 25, 2023; CCP's Exhibit 10, CCP's Exhibit 10, CCP's April 8, 2021 Demand Letter, docket no. 51-10, filed August 25, 2023.

[57] CCP Response, docket no. 51, at 11; CCP's Exhibit 11, CCP's January 21, 2022, Final Repair Cost Payment Demand, docket no. 52-1, filed August 25, 2023.

[58] CCP Response, docket no. 51, at 11.

[59] Milliken Motion, docket no. 46, ¶5 at 9; Lease Agreement, Exhibit 1, docket no. 2-1, at 8.

[60] CCP Response, docket no. 51, at 12, 19-20.

[61] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

reasonable jury could return a verdict for the nonmoving party."[62] A fact is material if "it is essential to the proper disposition of [a] claim."[63] And in ruling on a motion for summary judgment, "the factual record" and "all reasonable inferences" are viewed in a light most favorable to the nonmoving party.[64] "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[65] "To survive summary judgment, [plaintiff must] present some evidence beyond the allegations in his complaint to support his allegations.[66]

## Substantive Legal Standards

### 1. Breach of Contract

Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[67] "[T]o properly state a claim for a breach of contract, a party must allege sufficient facts, which [this court] view[s] as true, to satisfy each element."[68] "To succeed on a breach of contract claim, '[a] plaintiff is required to prove both the fact of damages and the amount of damages.' "[69] "[W]hile the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises

---

[62] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[63] *Adler*, 144 F.3d at 670.

[64] *Id.*

[65] *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023).

[66] *Askew v. United States*, No. 23-3046, 2024 WL 242858, at *2 (10th Cir. Jan. 23, 2024) (internal quotation marks omitted).

[67] *Travelers Prop. Cas. Co. of Am. v. Fed. Recovery Servs., Inc.*, 156 F. Supp. 3d 1330, 1334 (D. Utah 2016) (quoting *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001)).

[68] *Big Squid, Inc. v. Domo, Inc.*, No. 2:19-CV-193, 2019 WL 3555509, at *7 (D. Utah Aug. 5, 2019).

[69] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013) (citing *Stevens-Henager Coll. v. Eagle Gate Coll., Provo Coll., Jana Miller*, 248 P.3d 1025, 1030 (Utah Ct. App. 2011)).

above speculation and provides a reasonable, even though not necessarily precise, estimate of damages."[70] "[M]ere conclusions and conjecture will not suffice."[71] "Rather, the plaintiff must provide supporting evidence from which the factfinder may derive a reasonable estimate of the amount of damages."[72] "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of the prima facie case justifies a grant of summary judgment to the defendant."[73]

### 2. Waste

The three elements for a waste claim are: "(1) an act constituting waste, (2) the act must be done by one legally in possession, and (3) the act must be to the prejudice of the estate or interest therein of another."[74] "The measure of damages for waste is established by showing either the difference in market value before and after the injury, or the cost of restoration."[75] Waste is generally defined as "the destruction, misuse, alteration, or neglect of premises."[76]

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under Utah law, an implied covenant of good faith and fair dealing inheres in every contact."[77] "Under the covenant of good faith and fair dealing, both parties to a contract

---

[70] *TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 199 P.3d 929, 932–33 (Utah 2008); *see also Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013) (citing *TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 305 P.3d 171, 177 (Utah 2008)).

[71] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 180 (Utah Ct. App. 2013).

[72] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013) (citations omitted).

[73] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013).

[74] *Eleopulos v. McFarland & Hullinger, LLC*, 145 P.3d 1157, 1159 (Utah Ct. App. 2006) (citing *Oquirrh Assocs. v. First Nat'l Leasing Co.*, 888 P.2d 659, 664 (Utah Ct. App.1994)); *see also Mountain Dudes, LLC v. Split Rock, Inc.*, No. 2:08-CV-940-CW, 2011 WL 1549425, at *13 (D. Utah Apr. 20, 2011).

[75] *Eleopulos v. McFarland & Hullinger, LLC*, 145 P.3d 1157, 1159 (Utah Ct. App. 2006) (citations omitted).

[76] *United States v. Wangsgard*, No. 1:04CV00045 DS, 2005 WL 1743751, at *2 (D. Utah July 20, 2005) (citations omitted).

[77] *Gardner v. Deseret Mut. Benefit Administrators*, No. 2:14-CV-00602-DN-EJF, 2016 WL 2588165, at *7 (D. Utah May 4, 2016) (citing *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004)).

impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."[78] "To prevail Plaintiff must prove breach of this implied covenant through evidence showing an intentional effort to injure the other party's right to receive the benefits of the contract."[79] "The covenant, however, does not establish new rights and duties to which the parties did not agree."[80]

### 4. Damages

"As a general rule, legal damages serve the important purpose of compensating an injured party for actual injury sustained, so that she may be restored, as nearly as possible, to the position she was in prior to the injury."[81] "Typically, there are two types of damages a non-breaching party can recover in an action for breach of contract: general damages, which flow naturally from the breach, and consequential damages, which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into."[82]

In Utah, Plaintiffs have "the responsibility of producing sufficient evidence both to establish the 'fact of damages' and [to] provide a reasonable, even though not necessarily precise, 'estimate of damages.' "[83] "The level of [evidence] required to establish the *fact* of [damages] is generally higher than that required to establish the *amount* of [damages]."[84] "To

---

[78] *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004).

[79] *Schmitt v. Stearns Lending, Inc.*, No. 2:11CV00381 DS, 2011 WL 3861609, at *2 (D. Utah Aug. 31, 2011) (citing *Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102,1113 (10th Cir. 2009)).

[80] *Id.*

[81] *Mahmood v. Ross*, 990 P.2d 933, 937 (Utah 1999) (citaitons omitted) (defining damages for a breach of contract claim).

[82] *Id.*

[83] *Strong v. Prince, Yeates & Geldzahler*, 416 F. Supp. 3d 1300, 1311 (D. Utah 2019) (quoting *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 905 (Utah 2012)).

[84] *Strong v. Prince, Yeates & Geldzahler*, 416 F. Supp. 3d 1300, 1311 (D. Utah 2019).

prove the fact of damages, the party must do more than merely give rise to speculation that damages in fact occurred and instead must provide evidence that give[s] rise to a reasonable probability that the [party] suffered damage[s]."[85] The standard for determining the amount of damages, is Plaintiffs must provide "evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages."[86]

### 5. Attorney's Fees

"Attorney fees are generally recoverable in Utah only when authorized by statute or contract."[87] "Fees provided for by contract, moreover, are allowed only in strict accordance with the terms of the contract."[88]

## C. DISCUSSION

Defendant, Milliken, argues it is entitled to summary judgment on CCP's claims for breach of contract, waste, and breach of the implied covenant of good faith and fair dealing that CCP asserted for the: (1) defeasance of a conduit loan, (2) tilt-up repairs, mezzanine repairs, and property taxes, (3) repairs for the roof of the lease premises, (4) removing and replacing mechanical units on the Leased Premises, (5) two months of rent abatement, and (6) attorney's fees.

### 1. The parties agree that the defeasance claim for more than $644,000 has been withdrawn

In its Complaint, CCP made a claim for more than $644,000 for the fees and costs it incurred to defease its conduit loan with Wells Fargo Bank. However, during discovery CCP

---

[85] *Strong*, 416 F. Supp at 1311 (internal quotation marks omitted).

[86] *Murphy v. Whalen*, 437 P.3d 619, 621 (Utah Ct. App. 2018).

[87] *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, No. 2:16-CV-250 DBP, 2020 WL 1434477, at *2 (D. Utah Mar. 24, 2020) (quoting *Prince v. bear River Mutl Ins. Co.*, 56 P.3d 524, 539 (Utah 2002)).

[88] *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, No. 2:16-CV-250 DBP, 2020 WL 1434477, at *2 (D. Utah Mar. 24, 2020) (quoting *Foote v. Clark*, 962 P.2d 52, 54 (Utah 1998)).

confirmed that it was withdrawing its claim.[89] In its Response to the Motion for Summary

Judgment, CCP acknowledges that it already withdrew its claim related to the fees and costs it

incurred to defease its conduit loan.[90] Therefore, the conduit loan claim is dismissed.

## 2. The parties agree that Milliken repaid CCP for the costs related to the tilt-up repairs, mezzanine repairs, and property taxes

In its Motion, Milliken asserted that it reimbursed CCP for all charges related to the tilt-

up repairs, mezzanine repairs, and property taxes.[91] CCP responded that Milliken did not fully

reimburse CCP for these claims because Milliken did not reimburse CCP for the costs of

collection and attorneys' fees for these claims.[92] Milliken is entitled to judgment as a matter of

law as to the substantive costs for the mezzanine repair, tilt-up repair, and property tax claims

because CCP acknowledges that Milliken fully repaid the costs for these repairs and property

taxes. CCP's related claim for attorney's fees for the tilt-up repairs, mezzanine repairs, and

property taxes will be analyzed separately.

## 3. Milliken is entitled to summary judgment for CCP's roof repair claims because CCP did not provide any evidence of damages

Milliken argues that CCP's claim for roof repairs should be dismissed because: (1) the

maintenance of the roof was Milliken's responsibility under the lease; (2) fact and expert

discovery has closed and CCP has not disclosed an expert that supports the claims regarding the

roof; and (3) CCP has presented no evidence to support any claim that Milliken should replace

the roof of the Leased Premises.[93] CCP argues: Section 17 of the lease provides that CCP is not

---

[89] Milliken Motion, docket no. 46, at 19-20.

[90] CCP Response, docket no. 51, at 1.

[91] Milliken Motion, docket no. 46, at 16, 28-30.

[92] CCP Response, docket no. 51, at 38-41.

[93] Milliken Motion, docket no. 46, at 20.

responsible for damages to the roof that is caused by Milliken; and CCP will present fact testimony that Milliken penetrated the roof without written permission for the purpose of installing the mechanical units.

Milliken is entitled to summary judgment for CCP's claims regarding the roof repairs because CCP has not provided any evidence as to the amount of the damages it sustained from the penetrations to the roof. [94] To put it differently, CCP did not: (1) specify the size of the roof-repair claim; (2) explain how damages for the roof-repair claim would be calculated; or (3) provide a statement from a witness or expert witness that would attest to the size or cost of the roof-repair claim. Instead, CCP argues that Milliken "should be responsible for a portion of the cost to replace the roof" without specifying what that portion should be or how much it cost to replace the entire roof. [95] In Utah, Plaintiffs must provide "evidence that rises above speculation and provide[] a reasonable, even though not necessarily precise, estimate of damages." [96]

CCP's claims regarding the roof are dismissed because CCP did not provide any estimate as to the damages and discovery on this issue is closed. Specifically, CCP's Response to Milliken's Motion for Summary Judgment does not provide any figures or calculations for CCP's roof claim. [97] Additionally, CCP's Second Supplement to its Rule 26 Disclosures states that it contains a "computation of each category of damages." [98] With regards to the roof-repair claim, this document states only that CCP reserves the right to seek reimbursement for roof-

---

[94] CCP Response, docket no. 51, at 29-30; Complaint, docket no. 2, at 5, 9, 13.

[95] CCP Response, docket no. 51, at 27.

[96] *Murphy v. Whalen*, 437 P.3d 619, 621 (Utah Ct. App. 2018).

[97] CCP Response, docket no. 51, at 29-30.

[98] Exhibit 18, CCP's Second Supplement to Rule 26 Initial Disclosures, docket no. 52-7, at 1-3, filed August 25, 2023.

related repairs, but the document lacks a computation of damages for the roof-related repairs.[99] The roof repair claim is dismissed.

### 4. Milliken is not entitled to summary judgment on CCP's rent abatement claim because there are disputes as to several material facts for this claim

Milliken argues that CCP's $115,301.03 claim for two months of rent abatement should be dismissed because: (1) CCP and its contractors failed to order new swamp coolers for the premises until after the new lease already began, which caused the two-month delay in the new tenant occupying the Leased Premises; and (2) the deadline for the new tenant to cancel the new lease agreement had already passed by the time CCP gave the new tenant two months of rent abatement.[100]

CCP responds that Milliken's actions caused the delay in repairs being completed, and these unfinished repairs necessitated the rent abatement.[101] First, CCP provides evidence that Milliken ceased operations in June 2019, but refused to give CCP a timetable for repairs in 2020.[102] Additionally, Milliken refused to give CCP 24/7 access for the repairs to the premises until February 2021.[103] Second, Milliken permitted Gibbs International ("Gibbs") to remove the equipment that Milliken sold to Gibbs until the end of December 2020 or early January 2021 instead of in June 2020, as Milliken originally agreed.[104] Third, there was a delay in the repairs being completed because Milliken left its possessions and debris on the premises.[105] Fourth,

---

[99] Exhibit 18, CCP's Second Supplement to Rule 26 Initial Disclosures, docket no. 52-7, at 3.

[100] Milliken Motion, docket no. 46, at 23.

[101] CCP Response, docket no. 51, at 32-35

[102] CCP Response, docket no. 51, at 33; CCP's Exhibit 8, CCP's July 14, 2020, Demand Letter, docket 51-8, at 1-3.

[103] CCP Response, docket no. 51, at 33; Milliken's Reply, docket no. 59, at 4.

[104] CCP Response, docket no. 51, at 33.

[105] CCP Response, docket no. 51, at 33.

there was a delay in starting repairs because Milliken originally stated it would provide its own

contractors for the repairs, but Milliken later changed its mind.[106]

The rent abatement claim will be left for trial because there are disputes as to material

facts regarding this claim. Specifically, it is unclear: (1) if the new tenant took possession of the

Leased Premises on June 1, 2021, as the New Lease specified; (2) if the delay for repairs and the

slow pace of repairs were caused by Milliken, CCP, or by a third party for the various reasons

the parties specified in their filings; and (3) whether four months was a reasonable amount of

time to complete repairs of the Leased Premises.

### 5.   Milliken is entitled to summary judgment on CCP's claim for costs to replace the mechanical units, but summary judgment cannot be entered against the claim for the costs to remove the mechanical units from the Leased Premises

Milliken argues that CCP's claim for 75% of the more than $100,000 costs for removing

and replacing the mechanical units fails because the lease agreement does not permit CCP to

assign these costs to Milliken.[109] By way of background, Milliken installed swamp coolers and

HVAC units on the Leased Premises and left them on the Leased Premises. Section 19 of the

Lease Agreement permitted Milliken to leave these mechanical units on the Leased Premises.[110]

Milliken asserts that: (1) these mechanical units were well maintained; (2) these mechanical units

were in good working condition at the time Milliken ceased its business operations; (3) CCP did

---

[106] CCP Response, docket no. 51, at 34.

[109] Milliken Motion, docket no. 46, at 21.

[110] *See* Milliken Motion, docket no. 46, at 21 (stating Section 14 and Section 18 of the Lease Agreement permitted the tenant to leave the mechanical units on the lease premises); Commercial Lease Agreement, Exhibit 1, docket no. 2-1, at 4-5).  To be clear, the parties' briefs state the Mechanical Units claim is limited to mechanical units that Milliken installed on the leased premises.  *See* CCP Response, docket no. 51, at 31; Milliken Motion, docket no. 46, at 21.

not check the operational condition of the mechanical units before it chose to remove them; and (4) CCP chose to remove and replace these mechanical units with new mechanical units.[111]

In response, CCP argues that Section 18 of the Lease Agreement requires that the tenant "shall leave the Premises and any improvements in operable, clean and good condition, ordinary wear and tear expected."[112] CCP reasons that Milliken breached Section 18 of the lease because: (1) the air conditioning unit above the business office was not working for years; (2) Milliken would only invest in the bare minimum "patch" fixes of the HVAC system; (3) CCP's contractor, Paxman, will provide expert testimony that the swamp coolers were "extremely beat up" and not well-maintained; (4) Paxman recommended that the mechanical units be replaced; and (5) there is insufficient evidence in the record to support Milliken's assertion that the mechanical units could be repaired.[113]

Milliken is entitled to judgment as a matter of law on CCP's claim for the *replacement costs* of mechanical units that Milliken purchased and installed on the Leased Premises because CCP did not suffer any *damages* when CCP chose to replace mechanical units that CCP did not purchase. To put it differently, CCP is not entitled to the cost of replacement for these mechanical units because CCP did not purchase the mechanical units that Milliken itself purchased and installed during the 15-year lease. Milliken may have breached Section 18 of the lease agreement by leaving mechanical units on the Leased Premises that were in poor condition. However, even if Milliken breached Section 18 of the Lease Agreement, as CCP suggests, CCP is not entitled to the replacement costs for the mechanical units because the mechanical units were purchased by Milliken.

---

[111] Milliken Motion docket no. 46, at 22.

[112] CCP Response, docket no. 51, at 30.

[113] CCP Response, docket no. 51, at 30-32.

Milliken is *not* entitled to judgment as a matter of law on CCP's claim for the costs to remove the mechanical units that Milliken installed from the premises. The parties disagree whether Milliken left the premises and fixtures in "operable, clean, and good condition" as required by Section 18 of the Lease Agreement.[114] If Milliken breached Section 14 or Section 18 of the Lease Agreement then: (1) CCP would be entitled to damages for the cost of removal under one or more its claims; and (2) the language in Section 19 of the Lease Agreement that states the tenant has no obligation with regards to the cost of removal would not apply. This claim must be tried.

### 6. Milliken is entitled to summary judgment on CCP's claims for attorney's fees and the cost of collection that CCP incurred pursuing the roof repair claim and the mechanical units claim, but not for pursuing any other claim

Milliken argues that CCP's claim for attorney's fees should be dismissed because the Lease Agreement only provides the landlord recovery for attorney's fees if the tenant is in "default," and Milliken argues it never was in "default" under the terms of the Lease Agreement. Milliken argues it is not in default because: (1) the term "default" is limited to a tenant's failure to pay its monthly rental obligations, and Milliken paid its monthly rental obligations for the leasing period; (2) the parties are still litigating over who is responsible for the costs of repairs; and (3) CCP never informed Milliken it was in default.[115]

In response, CCP argues that Milliken is in default under the terms of the Lease Agreement because a tenant is in "default" under the Lease Agreement when the tenant fails to pay any amounts due to the landlord under the Lease Agreement.[116] In support of this argument, CCP reasons: (1) Section 6(d) of the lease agreement defines the term "Rent" to include sums

---

[114] Milliken Motion, docket no. 46, at 21; CCP Response, docket no. 51, at 30-32.

[115] Milliken Motion, docket no. 46, at 26.

[116] CCP Response, docket no. 51, at 26.

owed to the landlord that are separate from the monthly rent payments; (2) Section 16 of the

lease agreement is titled "Tenant Repairs and Maintenance" and Section 16 states that if the

tenant "should default in performance of Tenant's obligations under this Paragraph . . . Landlord

may perform Tenant's obligations under this section and any amount so expended shall be

deemed additional rent due [to] Landlord under this Lease"; (3) CCP's attorneys sent Milliken

three notices that stated it would be in default if it did not pay for the repairs and costs of

collection that it was obligated to pay under the Lease Agreement, and Milliken failed to pay

these costs; and (4) Section 29 of the Lease Agreement states: "[i]n the event Landlord places the

enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's

default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees,

whether suit is actually filed or not."[117]

### a. Milliken's Motion for Summary Judgment for CCP's entire attorney's fees and cost of collection claim is denied.

Section 6(d) and Section 16 of the Lease Agreement establish that the term "rent"

includes money owed to the landlord for the cost to repair the Leased Premises.[118] Specifically,

Section 6(d) states, "the term 'rent' shall be deemed to include Base Rent **and any sums owing**

**to Landlord as additional rent**, if any, payable by Tenant to Landlord hereunder."[119]

Additionally, Section 16 states that if a tenant "defaults" in its obligations to repair the premises,

the Landlord may repair the premises "and **any amount so expended shall be deemed**

**additional rent due** [to] Landlord under this Lease."[120] Therefore, CCP's surviving claims that

Milliken is in default for failing to complete repairs or reimburse CCP for the cost of repairs give

---

[117] CCP Response, docket no. 51, at 36-37.

[118] Lease Agreement, docket no. 2-1, at 2.

[119] Lease Agreement, docket no. 2-1, at 2 (emphasis added).

[120] Lease Agreement, docket no. 2-1, at 5 (emphasis added).

rise to a claim for rent, which supports a claim for attorney's fees and collection costs. Milliken is not entitled to Summary Judgment against these claims.

CCP's claim for attorney's fees is supported by Section 29 of the Lease Agreement because Section 29 states:

> In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not.

CCP's claim for attorney's fees is authorized under the Lease Agreement because: (1) if Milliken failed to pay for repairs that it was required to pay for under the Lease Agreement within ten days of receiving written notice of non-payment then Milliken is in default; and (2) CCP hired attorneys to collect repair costs from Milliken. For these reasons, Milliken's Motion for Judgment for the entirety of CCP's attorney's fees claim is denied.

### b. Milliken's Motion for Summary Judgment for CCP's claim for attorney's fees and the costs of collection that CCP incurred for the roof repair claim and the mechanical units claim is granted.

Milliken is entitled to Summary Judgment on CCP's claims for attorney's fees and costs that CCP incurred pursuing reimbursement for the repairs for the roof and the costs for the mechanical units. As stated above, CCP's roof-repair claim failed because it did not provide a reasonable estimate for the damages it sustained to its damaged roof. Therefore, CCP cannot recover attorney's fees or the costs it incurred pursuing this claim.

As for CCP's mechanical units claim, CCP primarily pursued a claim to recover the replacement value of the mechanical units that CCP was not entitled to pursue. In other words, Milliken did not "default" on the Lease Agreement by failing to pay the replacement value of the mechanical units. Furthermore, in Utah an award of attorney's fees is "allowed only in strict

accordance with the terms of the contract."[121] Plaintiff is not entitled to attorney's fees for its mechanical units claim because it pursued a remedy that it was not entitled to receive under the Lease Agreement (i.e., the replacement value of the mechanical units). For these reasons, Milliken's Motion for Summary against CCP on its claim for cost of collection and attorney's fees for the mechanical units claim is granted.

### c. Section 26 of the Lease Agreement cannot be used to recover attorney's fees from Milliken because Section 26 is an indemnification provision that only applies to third parties.

The parties were ordered to file supplemental memorandums to explain the effect that Section 26 of the Lease Agreement had on CCP's claim for attorney's fees. Section 26 states:

> **Tenant's Indemnity:** Except for matters arising from Landlord's negligence, gross negligence, willful misconduct or failure to perform any of its obligations hereunder, Tenant agrees to **protect, indemnify and save** Landlord and Landlord's officers, employees and agents harmless from and against all liabilities, damages, costs, expenses (including all reasonable attorneys' fees and expenses incurred by Landlord or any of Landlord's employees or agents), causes of action, suits, demands, judgments and claims of any nature whatsoever which may arise at any time during the term of this Lease or any extensions thereof out of Tenant's use or occupancy of the Premises, without regard to the source, nature or validity of the claim or action, but only to the extent that Landlord's actual costs and expenses exceed all insurance proceeds paid to Landlord as a result of such use or occupancy of the Premises.[122]

The issue is whether Section 26 is a first-party provision that can be invoked by the Landlord against the Tenant or a third-party provision that can only be used to require payment of fees arising from claims by or against third parties. "Utah courts follow a rule of strict construction when interpreting an indemnity agreement."[123] "Under this strict construction rule, a party is

---

[121] *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, No. 2:16-CV-250 DBP, 2020 WL 1434477, at *2 (D. Utah Mar. 24, 2020) (quoting *Foote v. Clark*, 962 P.2d 52, 54 (Utah 1998)).

[122] Exhibit 1, Commercial Lease Agreement, docket no. 2-1, at 6-7 (emphasis added).

[123] *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1114 (D. Utah 2005).

contractually obligated to assume ultimate financial responsibility for the acts of another only when that intention is clearly and unequivocally expressed in the contract."[124]

The District of Utah analyzed a provision that is similar to Section 26 in *Canopy Corp. v. Symantec Corp.*[125] In that case, the provision at issue was titled "Indemnification" and provided in relevant part:

> PowerQuest agrees to indemnify, hold harmless, and **defend** Telegistics from all claims, damages, costs and expenses (including reasonable attorneys' fees) that arise from the negligence or willful misconduct of PowerQuest or PowerQuest's personnel in performing services under this Agreement, or from PowerQuest's breach of any of the terms of this Agreement.[126]

The Court reasoned that the provision's use of the word "defend" narrowed the provision's meaning and "indicates that the parties intended the provision to apply only to third-party claims because the word would have no effect in a direct action between the parties."[127] Similarly, Section 26's use of the word "protect" also indicates that the parties intended the provision to only apply to third-party claims. Additionally, the indemnity provision does not clearly and unequivocally allow CCP to recover attorneys' fees from its tenant, which is required under Utah law.[128] For these reasons, Section 26 of the Lease Agreement does not permit CCP to recover attorney's fees from Milliken.

---

[124] *Id.*

[125] *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1114 (D. Utah 2005).

[126] *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1114 (D. Utah 2005) (emphasis added).

[127] *Id.* at 1115.

[128] *Id.*, at 1114.

### D.      ORDER

IT IS HEREBY ORDERED that Milliken's Motion for Summary Judgment against

CCP's claims for :

(1)     the conduit loan defeasance is GRANTED;

(2)     the tilt-up repairs, mezzanine repairs, and property taxes is GRANTED;

(3)     the roof-repair is GRANTED;

(4)     rent abatement is DENIED;

(5)     costs to remove and replace the mechanical units is GRANTED for the costs to
        replace the mechanical units and DENIED for the costs to remove the mechanical
        units; and

(6)     attorney's fees and costs is GRANTED for the attorney's fees and costs incurred
        pursuing the roof repair claim and the mechanical units claim, but DENIED as to
        all other claims.

Signed February 23, 2024.

BY THE COURT

David Nuffer
United States District Judge