THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COMMERCE COMMERCIAL PARTNERS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MILLIKEN & COMPANY, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MILLIKEN'S MOTION IN LIMINE NO. 6 TO EXCLUDE PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES and GRANTING [71] MOTION IN LIMINE RE: PLAINTIFF'S ATTORNEYS' FEES AND COSTS**<br><br>Case No. 4:22-cv-00020-DN-PK<br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This lawsuit arises from a commercial tenant's alleged breach of a Lease Agreement for an industrial building.[1] Defendant Milliken & Company ("Milliken"), the former tenant, moved to exclude evidence of building owner Commerce Commercial Partners' ("CCP") claim for attorneys' fees "because [it] is irrelevant to any issues that remain."[2] CCP responded.[3] This order determines that attorney's fees evidence appears relevant and will be received in the second phase of a two-phase trial. The first phase starting Tuesday June 25, 2024, will determine CCP's claims for damages and facts establishing *entitlement* to recovery attorneys' fees under the Lease Agreement. The second phase, following immediately after the first phase, will determine

---

[1] The Lease Agreement is attached to several documents in the case file, and is attached to the Complaint as Exhibit 1, docket no. 2-1, filed March 29, 2022.

[2] Motion In Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees ("81 Motion") at 1, docket no 81, filed May 15, 2024.

[3] Opposition To Defendant's Motion in Limine No. 6 To Exclude Plaintiff's Claim for Attorneys' Fees (108 Opposition), docket no. 108, filed May 29, 2024.

applicability of any other theories for recovery of attorneys' fees (including the applicability of

Utah Code Ann. § 78B-5-82); amounts of fees to award; and to whom any award is made.[4]

## Contents

I.     FACTUAL BACKGROUND ........................................................................................ 2
II.    LEGAL SETTING .................................................................................................... 3
    A.    Complaint Allegations Regarding Attorneys' Fees ............................................ 3
    B.    Milliken's Answer Does Not State a Basis for Attorneys' Fees ......................... 3
    C.    Damage Disclosures ............................................................................................. 4
    D.    Partial Summary Judgment Ruling Regarding Attorneys' Fees .......................... 4
    E.    Construction of Relevant Lease Agreement Provisions Regarding Attorneys' Fees
        ........................................................................................................................... 5
    F.    The Parties' Analysis Has Confused Issues ........................................................ 9
        1.    Confusion with "Additional Rent" Provisions ........................................... 9
        2.    Confused Interpretation of Section 29. .................................................... 11
        3.    Clarification of Lease Agreement Concepts and Requirements. .............. 13
III.   DISCUSSION OF SPECIFIC ISSUES IN MILLIKEN'S MIL 6 ................................... 16
    A.    Trial Is Required to Evaluate a Claim Under Utah Code Ann. § 78B-5-826 ....... 16
    B.    Milliken's argument that CCP did not meet the requirement of Sections 16 and 29
        of the Lease Agreement is based on misinterpretation of the Lease Agreement .. 17
    C.    It is not possible to determine CCP's entitlement to fees for its rent abatement
        claim ................................................................................................................... 18
IV.   THE USUAL PRACTICE IS TO DETERMINE FEES POST TRIAL .......................... 18
V.    THE ALTERNATIVE BASES FOR ATTORNEYS' FEES CLAIMS  REQUIRE A
    PHASED TRIAL .................................................................................................... 18
VI.   ISSUES SUGGESTED BY DAMAGES DISCLOSURE ............................................. 20
VII.  ORDER ................................................................................................................. 21

## I.    FACTUAL BACKGROUND

CCP is a landlord for commercial properties. CCP constructed an industrial building

("Leased Premises") in Ft. Pierce Industrial Park in St. George, Utah, in or around 2004.

Milliken was the commercial tenant of the Leased Premises from May 9, 2006, until May 31,

---

[4] This order also resolves a related motion filed by CCP (Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs ("71 Motion"), docket no. 71, filed May 15, 2024) and opposed by Milliken (Response to Plaintiff's Motion in Limine Re: Attorneys' Fees and Costs, docket no. 100, filed May 26, 2024). The 71 Motion sought resolution of attorneys' fees issue in post-trial proceedings.

2021. Even before the lease ended, the parties had disputes about the condition and return of the premises which eventually ripened into this case.

## II.   LEGAL SETTING

### A.  Complaint Allegations Regarding Attorneys' Fees

CCP's Complaint[5] specifically seeks attorneys' fees under contract in its Prayer for Relief:

> . . . an award to CCP of all attorneys' fees and other costs of bringing this action as authorized by contract . . . .[6]

The Complaint also seeks attorneys' fees in its First Cause of Action for breach of the Lease Agreement —

> Milliken should be compelled to reimburse CCP for all damages it has suffered due to Milliken's breaches of contract in an amount to be established at trial, including consequential and incidental damages, attorneys' fees incurred before and after suit, 10% late fee as provided in the Lease, and interest on all damages at the contractual or post-judgment rate.[7]

— and in its Second Cause of Action for breach of the covenant of good faith and fair dealing:

> Milliken has violated the implied covenant of good faith and fair dealing and has damaged CCP in an amount to be proven at trial, including consequential and incidental damages, plus costs, attorneys' fees, 10% late fee as provided in the Lease, and interest at the contractual or post-judgment rate.[8]

### B.  Milliken's Answer Does Not State a Basis for Attorneys' Fees

By contrast, Milliken's Answer does not state a basis for a claim of attorneys' fees but does ask for an "award [of] costs of litigation including reasonable attorneys' fees" in its prayer for relief. Milliken did not file a counterclaim.

---

[5] Complaint, docket no. 2, filed March 29, 2022.

[6] *Id.* ¶ V. at 13.

[7] *Id.* ¶ 67 at 11.

[8] *Id.* ¶ 71 at 12.

### C.  Damage Disclosures

Damage disclosures CCP made under Fed. R. Civ. P. 26(a) and DUCivR 26-1 have included attorneys' fees calculations.[9] No damages disclosures have been filed by Milliken.[10]

### D.  Partial Summary Judgment Ruling Regarding Attorneys' Fees

Liability for attorneys' fees on some of CCP's attorneys' fees claims was subject of an earlier ruling on Milliken's motion for partial summary judgment. The 69 Summary Judgment Order)[11] denied CCP attorneys' fees and the cost of collection that CCP incurred pursuing its claims for roof repairs and mechanical units installed by CCP. These denials were based on CCP's failure to provide a reasonable estimate for the damages it sustained to its damaged roof[12] and on the mechanical units claim because CCP pursued the replacement value of the mechanical units that CCP installed, a remedy that it was not entitled to receive under the Lease Agreement.[13]

The discussion in the summary judgment order also considered, to a limited extent, the attorneys' fees provisions in the Lease. Though the parties did not raise Section 26 of the Lease Agreement in their briefing on Milliken's motion for partial summary judgment, they responded to an order and filed memoranda "discussing the effect of Section 26 of the Lease on the CCP claim for attorneys' fees."[14] The 69 Summary Judgment Order addressed "whether Section 26 is

---

[9] Exhibits B, C, and D to 81 Motion. *See also* documents attached as docket no. 79-1 and docket no. 79-2 to Defendant's Motion in Limine No. 5 to Exclude Plaintiff's Alleged Waste Damages, docket no. 79, filed May 15, 2024. While the parties refer to these disclosures as "filed" on certain dates, they do not appear on the docket except as exhibits to motions.

[10] Under DUCivR 26-1(a)(1) these documents are filed only when exhibits to a motion.

[11] Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment, docket no. 69, filed February 23, 2024.

[12] *Id.* at 24.

[13] *Id.* at 25.

[14] Docket text order, docket no. 66, filed January 17, 2024.

a first-party provision that can be invoked by the Landlord against the Tenant or a third-party provision that can only be used to require payment of fees arising from claims by or against third parties."[15] The 69 Summary Judgment Order stated that

> Section 26's [language] indicates that the parties intended the provision to only apply to third-party claims. Additionally, the indemnity provision does not clearly and unequivocally allow CCP to [independently] recover attorneys' fees from its tenant, which is required under Utah law. For these reasons, Section 26 of the Lease Agreement does not permit CCP to recover attorney's fees from Milliken.[16]

The 69 Summary Judgment Order found that Section 26 of the Lease Agreement would not support CCP's direct claims for attorneys' fees against Milliken.

The 69 Summary Judgment Order[17] interpreted the Lease Agreement as the parties did.[18] This order takes a new look at the construction of the Lease Agreement provisions on attorneys' fees.

### E.  Construction of Relevant Lease Agreement Provisions Regarding Attorneys' Fees

The relevant Lease Agreement provision regarding attorneys' fees is found in Section 29, entitled "Default." That attorneys' fees provision reads:

> In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not.[19]

This provision, contrary to the assumptions of the parties, is an independent part of Section 29. Section 29 describes remedies available to the parties.

---

[15] 69 Summary Judgment Order at 25.

[16] *Id.*

[17] *Id.* at 23-24.

[18] Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment at 36-37, docket no. 51, filed August 25, 2023; 108 at 9.

[19] Lease Agreement at 8. Other Lease Agreement provisions not relevant in this dispute give rights to recovery of attorneys' fees in specific circumstances, such as Section 24 Covenant Against Liens (page 6); Section 27 Landlord's Indemnity (page 6); and Section 28 Environmental Matters (page 7).

**SECTION 29.  Default:**  In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord, a late fee equal to ten (10%) percent of the amount past due shall be assessed and shall become immediately due.  In the event (i) Tenant shall fail to comply with any term, provision, condition or covenant of this Lease and shall not cure such failure within sixty (60) days after Tenant has received written notice of such non-compliance from Landlord, or (ii) Tenant shall file a petition under any applicable federal or state bankruptcy or insolvency law, then Landlord shall have the option to do any one or more of the following:

   **(a)**     Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord.  Tenant agrees to indemnify Landlord for all loss, damage and expense, which Landlord may suffer by reason of such termination.

   **(b)**     Without terminating this Lease, terminate Tenant's right of possession, whereupon rental shall continue to accrue and be owed by Tenant hereunder.  Thereafter, at Landlord's option, Landlord may enter upon and re-let all or a portion of the Premises (or re-let the Premises together with any additional space) for a term longer or shorter than the remaining term hereunder and otherwise on terms satisfactory to Landlord.  Tenant shall be liable to Landlord for the deficiency, if any, between Tenant's rent hereunder and all net sums received by Landlord on account of such re-letting (after deducting all costs incurred by Landlord in connection with any such re-letting, including without limitation, tenant improvement costs, brokerage commissions and attorney's fees).

   Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or any other remedies provided by law.  In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not.

   In the event Landlord shall fail to comply with any term, provision, condition or covenant of this Lease and shall not cure such failure within thirty (30) days after written notice to Landlord from Tenant of such failure to comply, Tenant, may provide a second written notice to Landlord setting forth Tenant's intent to cure such failure to comply.  If Landlord does not cure such failure to comply within ten (10) days following the receipt of written notice of Tenant's intent to cure, Tenant may cure such failure at the sole cost and expense of Landlord.  In such case, Landlord shall reimburse Tenant for such cost and expense, and failing to promptly do so, Tenant shall be entitled to set-off such costs and expenses against the rent.  Notwithstanding the foregoing provisions, in the event emergency repairs are required and Landlord has not, despite receipt of notice from Tenant, commenced such emergency repairs within twenty-four (24) hours of receipt of such notice from Tenant, Tenant shall have the immediate right to cure any such breach or default by Landlord prior to the expiration of the applicable notice and cure period if reasonably necessary to protect the Premises, to prevent immediate injury or damage to persons or property, or to prevent the interruption of Tenant's normal business operations, and Landlord shall promptly reimburse Tenant all amounts reasonably expended by Tenant to cure such breach or default.  In the event Landlord fails to promptly reimburse Tenant for such expenditures, Tenant shall have the right to set-off such costs and expenses against the rent.

The attorneys' fees provision is part of a two-paragraph sentence in the fourth paragraph of

Section 29. To understand its position and independence, Section 29 will be examined in its

entirety.

   The first four paragraphs of Section 29 provide remedies for the Landlord. The last

paragraph of Section 29 provides Tenant remedies.

The first paragraph of Section 29 has two sentences, with different purposes.

> **SECTION 29.  Default:**  In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord, a late fee equal to ten (10%) percent of the amount past due shall be assessed and shall become immediately due.  In the event (i) Tenant shall fail to comply with any term, provision, condition or covenant of this Lease and shall not cure such failure within sixty (60) days after Tenant has received written notice of such non-compliance from Landlord, or (ii) Tenant shall file a petition under any applicable federal or state bankruptcy or insolvency law, then Landlord shall have the option to do any one or more of the following:

The first sentence gives the Landlord the possibility of invoking a late fee on any failure to pay "rental or other sum due." It requires a notice, and the Tenant's failure to cure with ten days. This late fee is a remedy for the Landlord.

The second sentence gives the Landlord another right, 60 days after notice of the Tenant's failure to comply with any term, provision, condition or covenant of the lease. This trigger is broader than the late fee financial trigger. But the 60-day time period would run from the date of the same notice of default because a financial trigger is a failure to comply with a lease provision.

If notice of breach does not provoke a cure by the Tenant within 60 days, or if the Tenant files bankruptcy, the Landlord gains the right to take two actions in the following paragraphs (a) and (b). These are additional Landlord remedies beyond the late fee. Paragraphs (a) and (b) give the Landlord the right to (a) terminate the lease or (b) retake possession without terminating the lease. There is no conjunction between these two remedy paragraphs.

The fourth full paragraph has two sentences, with different purposes.

> Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or any other remedies provided by law.  In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not.

The first sentence clarifies that no remedy taken by the Landlord excludes any other remedy, whether in the lease or under the law. It makes all remedies in the Lease Agreement (in this

Section 29 and in other Sections) cumulative to each other and to the standard remedies provided by law.

The second sentence of the fourth paragraph is the attorneys' fee paragraph cited above. The second sentence attorneys' fees provision is, by its position; the text of the preceding paragraph with the termination and re-entry remedies; and the preceding sentence about cumulation of remedies, independent of the other parts of Section 29. This makes practical sense. In the event of any breach in a lease, a landlord will contact counsel. The entitlement to recover fees is conditioned on placing the enforcement of the Lease Agreement in the hands of an attorney on account of Tenant's default. There is no notice required to start the attorneys' fee obligation; the only requirements to recovery of attorneys' fees are (a) Tenant's default and (b) Landlord turning the matter to counsel. There is no requirement of time elapsing in this sentence. And there is no requirement of notice to start attorneys' fee accrual. Of course, notice of breach is required for other reasons and remedies.

As noted above, the last paragraph in Section 29 provides for Tenant remedies against the Landlord.[20]

Section 29 provides remedies for both parties. The Lease Agreement defines obligations throughout, and other Sections describe other remedies, but Section 29 cumulates them all and provides for Landlord recovery of attorneys' fees.

---

[20] The paragraph of Tenant remedies is more favorable as to time than the first paragraph of Section 29 for the Landlord. The Tenant need only give the Landlord 30 days after notice of the Landlord's failure to comply with any term, provision, condition or covenant of the lease. The second sentence gives the Tenant the right, after waiting 10 days after another notice that remains ignored, to cure at the Landlord's expense. That paragraph also gives the Tenant the right to make emergency repairs at the Landlord's expense if the Landlord fails to act within 24 hours after notice. However, this paragraph has no right for the Tenant to recover attorneys' fees.

### F.  The Parties' Analysis Has Confused Issues

The parties have erred in their understanding of the Lease Agreement provision on attorneys' fees. Milliken's 81 Motion summarizes the first part of this erroneous analysis:

> Therefore, the first step toward any effort to recover attorneys' fees under the Lease requires CCP to demonstrate: (1) a default by Milliken in a repair obligation; (2) notice to Milliken of the default; (3) a failure by Milliken to cure that default for more than thirty (30) days; and then (4) performance by CCP of the repair obligation it claims Milliken failed to meet.[21]

CCP's 108 Opposition argues within this framework, claiming compliance.[22]

The first two steps are somewhat accurate. Accrual of attorneys' fees starts with a default. And a notice of default is eventually required though not before hiring counsel. But the remaining two steps (failure to cure within 30 days and performance of repairs by CCP) are not required for an attorneys' fee obligation to accrue.

#### 1.  Confusion with "Additional Rent" Provisions

The parties draw the last two steps (expiration of 30 days and Landlord repairs) by interpolating the attorneys' fee sentence in Section 29 with some Section 16 provisions pertaining to another remedy, "additional rent."

**Section 16 Analysis.** Section 16 establishes the Tenant's obligations for repairs and maintenance. This Section is relevant to Milliken's obligations and CCP's allegations of breach, but not otherwise relevant on the issue of attorneys' fees.

The first four sentences of Section 16 establish Tenant's *repair and maintenance obligations*.

> **SECTION 16. Tenant Repairs and Maintenance.**  At all times during the term of this Lease and any extension thereof, but subject to the obligations of Landlord contained herein, Tenant shall maintain the fixtures, equipment and appurtenances thereon, and at

---

[21] 81 Motion, at 13. CCP's 108 Opposition argues within this framework, claiming compliance. 108 Opposition at 9.

[22] 108 Opposition at 9.

its sole cost and expense, make all repairs of any nature thereto as and when needed to preserve the Premises in good condition. Any modifications or alterations undertaken by Tenant shall be completed in a workmanlike and lien-free manner in accordance with all applicable codes and regulations. Subject to the obligations of Landlord contained herein, all damage or injury to the Premises and to its fixtures and appurtenances shall be repaired promptly by Tenant, at its sole cost and expense. All aforesaid repairs, restorations and replacements shall leave the Premises in a condition substantially equivalent to the status of the Premises on the Commencement Date.[23]

Breach of Milliken's repair and maintenance obligations gives rise to many of CCP's claims.

The last sentence of Section 16 deals with a different topic. It gives the Landlord another remedy not found in Section 29.

If Tenant should default in performance of Tenant's obligations under this Paragraph, and such default continues for more than thirty (30) days after receipt by Tenant or written notice of such default from Landlord, which notice shall specify in detail the nature of the default, Landlord may perform Tenant's obligations under this section and any amount so expended shall be deemed additional rent due Landlord under this Lease.

After a notice of breach, if 30 days elapses without cure, the "Landlord *may* perform Tenant's obligations under this section." This is an *optional* remedy, dependent on notice, time elapsing, repairs by Landlord, and expenditure of funds. Repair by the landlord is not required. The Landlord's *election* to repair and recover costs and create an additional rent obligation is a powerful remedy but not mandatory and not prerequisite to a status of default or to liability for or a right to recover of attorneys' fees. A status of default depends on the Tenant's actions or failures. The right to recovery of attorneys' fees depends on placement of the matters in the hands of the attorney.

This sentence makes clear that **default** occurs by the Tenant's acts or failures to act because it states that the notice is of an existing default. The Lease Agreement never says that default only exists upon notice or upon notice. Default is a fact of performance or neglect by

---

[23] Lease Agreement at 5.

Tenant – or under some Sections, by Landlord. Also, this sentence, combined with Section 21 and others, shows that notice to the Tenant is required.

The "additional rent" provision is powerful but never essential to a Landlord's claim of default or for attorneys' fees. The Lease Agreement declares certain sums advanced by the Landlord to be additional rent on certain conditions. This starts with reliance on Section 6(d):

> **SECTION 6(d) [Rent]** As hereinafter used, the term "rent" shall be deemed to include Base Rent and any other sums owing to Landlord as additional rent, if any, payable to Landlord hereunder.

Section 16 provides that costs advanced by the Landlord in fulfilling Tenant's breached obligations may become additional rent after 30 days' notice to Tenant of a failure to repair and Landlord repairs. (Another provision providing for "additional rent" is Section 8 Taxes.[24] That Section is not relevant on this record.[25])

Rent obligations open the door to additional remedies under the law and under the Lease Agreement which are not available for other lease breaches. For example, the (a) and (b) paragraphs of Section 29 become available.

The preconditions listed in the third and fourth steps of the Milliken analysis adopted by CCP apply to creating an "additional rent" obligation for the repair expenses advanced by CCP but they have nothing to do with attorneys' fees.

## 2. Confused Interpretation of Section 29.

The parties' logic goes further awry in imposing irrelevant portions of Section 29 onto the Landlord's right to recover attorneys' fees. As shown above, there are independent paragraphs and rights in Section 29. But Milliken states:

---

[24] Lease Agreement at 2-3.

[25] *Id*.

> Section 29 of the Lease requires payment of "rent[] or other sum due" to be owed and not paid by Milliken. If that occurs, Section 29 requires CCP to make an additional written demand that puts Milliken on notice of the amount due and gives a minimum of ten (10) days for Milliken to pay the amount due. CCP can only pursue the "cost of collection" of the amount due after that additional notice and ten-day period has expired, and those costs of collection can include "reasonable attorney's fees."[26]

This argument erroneously concludes that the Landlord is *required* to wait ten days after notice to have any remedies listed in Section 29. As discussed above in Part II. E, this is wrong. Breach occurs when the Tenant acts or fails to act in violation of lease obligations. Attorneys' fee liability accrues when the matter is referred to counsel.

Milliken justified its conclusion that ten days was required to elapse after notice by heavily editing the text of Section 29 to make the ten-day period a predicate to all remedies. This is how Section 29 was quoted in Milliken's 81 Motion, in the statement of facts and in the argument.[27]

> SECTION 29. Default: In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord . . . then Landlord shall have the option to do any one or more of the following:
> (b) Without terminating this Lease, terminate Tenant's right of possession, whereupon rental shall continue to accrue and be owed by Tenant hereunder . . . In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actual filed or not.

Comparison of Milliken's contracted quotation with the construction of Section 29 in this order[28] reveals several misimpressions by:

- collapsing the ten-day period after notice of default required for late fee imposition into parts of the Section which do not require ten days to elapse after notice;

---

[26] 81 Motion at 14.

[27] *Id.* at 3-4 and 13.

[28] *Supra,* Part II. E. at 5-8.

- failing to show the structure of the two paragraphs (a) and (b) introduced by the last sentence of the first paragraph;
- omitting the sentence regarding the cumulation of remedies; and
- creating a non-existent 'if-then' relationship between all the quoted material and the independent attorneys' fee provision.

CCP has apparently used this same analysis, not arguing against it, but claiming compliance. "CCP also issued a 10-day notice to Milliken for the balance of the cost for repairs to the mezzanine on May 28, 2021."[29] The ten-day period after notice in Section 29 applies only to the late fee.

These same misconstructions were the foundation of the summary judgment briefing.[30]

### 3.  Clarification of Lease Agreement Concepts and Requirements.

As the parties prepare for trial, it will be important for their evidence and argument to fit within the proper construction of the Lease Agreement. This section states some implications of proper construction of the Lease Agreement. These concepts and requirements relate to the attorneys' fees claims raised on this motion and to several other issues in the upcoming trial.

**Default, Notice, and Waiting Periods.** Default occurs by a party's action or inaction in violation of Lease obligations. Any breach of the Lease Agreement by any party is a **default**. Some remedies, including the accrual of a right to recover attorneys' fees are not dependent on notice or on any lapse of time after notice. **Notice** of breach is required for other remedies. Some remedies require a **waiting period** after notice and the Tenant's failure to cure. These remedies include the Landlord's ability to make repairs and have them become additional rent 30 days after notice of failure to repair or maintain (Section 16); the Landlord's imposition of a late fee

---

[29] 108 Opposition at 8.

[30] Defendant's Motion for Partial Summary Judgment at 26-29, docket no. 46, filed July 21, 2023; Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment at 36-37, docket no. 51, filed August 25, 2023; 108 at 9

10 days after notice of a financial default (Section 29); and the Landlord's ability to invoke the remedies to terminate the lease or re-enter without termination 60 days after notice of a financial default (Section 29, paragraphs (a) and (b)).

Consecutive waiting periods are not set out in Sections 16 and 29. Those waiting periods each serve a purpose and start running at a notice of breach. A notice of a breached repair obligation and cure by the Landlord under Section 16 not only triggers the 30 day waiting period before the Landlord's right to repair and asses under Section 16, but also is a notice of a sum due for purposes of the late fee under Section 29, and if not cured, also serves as notice that triggers the 60-day waiting period after which the remedies in paragraphs (a) and (b) of Section 29 may be exercised.

**Additional rent.** The parties have confused an *obligation* under the Lease Agreement with *additional rent*. Obligations are throughout the Lease Agreement. Any breach of an obligation by either party is a default. Only taxes[31] and repair costs may be qualified as additional rent. The Lease Agreement does not require that a Landlord invoke the provisions for "additional rent." The ability to convert these sums paid into "additional rent" may give the Landlord additional remedies under the Lease Agreement and under the law but the Landlord is not required to create the additional rent obligation by taking the cure action outlined in the last sentence of Section 16.

> If Tenant should default in performance of Tenant's obligations under this Paragraph, and such default continues for more than thirty (30) days after receipt by Tenant or written notice of such default from Landlord, which notice shall specify in detail the nature of the default, Landlord may perform Tenant's obligations under this section and any amount so expended shall be deemed additional rent due Landlord under this Lease.[32]

---

[31] Section 8 allows the Landlord to pay Tenant's taxes to convert them to "additional rent." Lease Agreement at 2-3.

[32] Lease Agreement, at 5.

A 30-day period must elapse after notice of default in the Section 16 duties before the Landlord may step in and make repairs. But Section 16 does not *require* the Landlord to perform Tenant's obligations: "Landlord *may* perform Tenant's obligations . . . ." If the Landlord wants a benefit by converting the repair expenditures into additional rent, the Landlord must give notice, wait 30 days, repair, and pay, but this is not required.[33]

**Late fees:** If late fees are sought, CCP must show that a default in payment was not cured ten days after notice as required by the first sentence of Section 29. The late fee may apply to any sum due under the Lease Agreement. But waiting the ten days after notice of non-payment is not required to 'formalize' a default or allow attorneys' fee obligations to accrue. And the ten day waiting period is not additional to the 60-day waiting period before the remedies in paragraphs (a) and (b) may be exercised.

**Remedies under paragraphs (a) and (b) of Section 29.** While perhaps not relevant in this case, so far as briefing reveals, the remedies under paragraphs (a) and (b) of Section 29 are subordinate to the second sentence of Section 29. They are independent of the rest of Section 29.

**Cumulation of remedies.** For the Landlord, the remedies of the entire Lease Agreement and those provided by law are cumulative, not exclusive.

**Attorneys' fees clause.** The sentence on attorneys' fees in Section 29 is independent of the rest of the Lease Agreement and conditional only upon the requirements in that sentence. No time periods after notices or Landlord payments are prerequisite. The merging of two subjects in that paragraph is similar to the merging of two subjects in the first paragraph and again in the last paragraph of Section 29.

---

[33] This is similar to the optional process in Section 8 allowing the Landlord to pay Tenant's taxes to convert them to "additional rent." (Lease Agreement at 2-3). Under that provision, no waiting period after notice to the Tenant is required. But the Section states only that the 'Landlord *may* pay' the taxes.

### III.    DISCUSSION OF SPECIFIC ISSUES IN MILLIKEN'S MIL 6

Milliken raises three issues in this motion in limine:

- CCP is not entitled to a fee award, but Milliken is, under Utah Code Ann. § 78B-5-826, because Milliken is the prevailing party in this case;[34]
- CCP did not meet the requirement of Sections 16 and 29 of the Lease Agreement to claim attorneys' fees;[35] and
- CCP is not entitled to attorneys' fees for its rent abatement claim.[36]

### A.  Trial Is Required to Evaluate a Claim Under Utah Code Ann. § 78B-5-826

As noted above, the claim under Utah Code Ann. § 78B-5-826[37] has not been raised before. And as is evident from the recitation of extensive facts in the 81 Motion,[38] there are many facts to be determined as a predicate to deciding the new issues raised by the claim under Utah Code Ann. § 78B-5-826.

The cases encourage a determination by the trial judge who has *heard* the case.

Which party is the prevailing party is an appropriate question for the trial court. This question depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court. . . . Appropriate considerations for the trial court would include, but are not limited to, (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims. Based on these and other relevant factors, the trial court is in a better position . . . to decide which party is the prevailing party.[39]

---

[34] 81 Motion at 9.

[35] *Id.* at 12.

[36] *Id.*  at 17.

[37]    A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.

[38] 81 Motion ¶¶ 1-28 at 2-8; 108 Opposition at 2-5.

[39] *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119, 1126–27. *See also Anderson & Karrenberg v. Jerry Warnick*, 2012 UT App 275, ¶12, 289 P.3d 600, 604 (2012).

The final factor, "the dollar amounts awarded," requires that final rulings are in place before any determination under Utah Code Ann. § 78B-5-826. And all the other listed factors – and others not enumerated by the *R.T. Nielson* decision – will be clearer after trial. It is necessary to take "a case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, or neither, parties may be considered to have prevailed."[40]

There are also unaddressed equitable issues.

> [C]ourts may also inform their decisions with other equitable principles. For example, in the spirit of leveling the playing field, courts should avoid using this statute to expose one party to a disproportionate risk of paying attorney fees that would result in a windfall to the other party. District courts should also apply common sense principles in determining the prevailing party, if any.[41]

The parties' substantive claims and defenses are not now resolved and the full history of the parties' relationship is not in the record. No awards have been made. The issues arising under Utah Code Ann. § 78B-5-826 are sequential, not preliminary, to determination of the core claims in the case. They will be deferred to a second phase of the trial set June 25, 2024.

## B. Milliken's argument that CCP did not meet the requirement of Sections 16 and 29 of the Lease Agreement is based on misinterpretation of the Lease Agreement

As discussed in Parts II. E and F of this Order, Milliken – and CCP – misinterpret the Lease Agreement provisions regarding attorneys' fees and other related provisions. Therefore, the argument that CCP did not meet the requirement of Sections 16 and 29 of the Lease Agreement to claim attorneys' fees is erroneously framed. And there are too many disputed facts to enable a conclusive finding about required notices and the dates matters were referred to counsel.

---

[40] *R.T. Nielson Co.*, 2002 UT ¶ 25.

[41] *Bilanzich v. Lonetti,* 2007 UT 26, ¶ 20, 160 P.3d 1041, 1047 (2007).

### C.  It is not possible to determine CCP's entitlement to fees for its rent abatement claim

Similar to the unresolved fact issues that bar decision on the satisfaction of preconditions to an attorneys' fees claim, undecided facts and misinterpretations also bar a current decision the CCP's eligibility for fees on the rent abatement claim.

## IV.     THE USUAL PRACTICE IS TO DETERMINE FEES POST TRIAL

The usual practice in this district, even in bench trials, is to determine attorneys' fee claims after trial. The liability and damage issues at trial lay groundwork for attorneys' fee determinations but keeping cases manageable requires limiting evidence at trial to the claims and defenses. Attorneys' fees are a collateral issue in most cases. And even though the parties have said the fee claims may be the driver in this case after such a long history of dispute and partial payments, the fee claims are still collateral to the merits. The need for a separate proceeding is great in a bench trial where one trier of fact has to absorb and synthesize the evidence. Presentation of attorneys' fee liability and amounts in the same setting as substantive claims would be distracting and could be prejudicial. Determination of attorneys' fees amounts involves a multitude of factors not central to CCP's pleaded claims and Milliken's defenses.[42] These concerns recommend not hearing attorneys' fees issues in the trial of substantive claims.

## V.     THE ALTERNATIVE BASES FOR ATTORNEYS' FEES CLAIMS REQUIRE A PHASED TRIAL

The parties have enlarged the attorneys' fee dispute by presenting additional bases for fees. The increasing complexities of fee issues also recommend a separate proceeding.

---

[42] *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988).

Milliken's 81 Motion raises a basis for an award of fees to it.[43] As stated above in Part III. A., the distinct issues arising under Utah Code Ann. § 78B-5-82 must be considered after taking evidence on the substantive damage claims.

In its 108 Opposition, CCP suggests additional bases for its claim for attorneys' fees claims beyond the Lease Agreement.[44] Because the Lease Agreement has provisions for award of attorneys' fees, it is unnecessary to import a provision for attorneys' fees by an implied covenant. Importing such a substantive obligation of a core nature would be as unacceptable as the covenant to sell and deliver a quantity of oil that was sought in *MC Oil.*[45] But the existing attorneys' fees provision could apply to any breach found to fall within the implied covenant of good faith and fair dealing.

> The implied covenant of good faith and fair dealing inheres in most contractual relationships and requires a party in a contract to perform consistent with the agreed common purpose and the justified expectations of the other party. This is recognized where it is clear from the parties' 'course of dealings' or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it. One such duty is an "implied duty that contracting parties 'refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'[46]

The purpose of the implied covenant of good faith and fair dealing is to prevent a party in technical compliance with an agreement from taking actions that defeat the purposes of the agreement, even if those actions are not expressly proscribed in the agreement. A breach of the implied covenant invokes all the written remedy provisions of the agreement, including this attorneys' fees clause.

---

[43] 81 Motion at 9-12.

[44] 108 Opposition at 10-16.

[45] *MC Oil & Gas, LLC v. UPL Three Rivers Holdings, LLC*, 2015 WL 14078433, *1, District of Utah, Case No. 1:15-cv-0038-DN (Memorandum Decision and Order, dated Nov. 25, 2015).

[46] *Cheney v. Hinton Burdick Hall & Spilker, PLLC,* 2015 UT App 242, ¶ 17, 366 P.3d 1220, 1225 (cleaned up).

CCP also suggests that attorneys' fees may be recovered in a claim for waste. This is incorrect, as discussed in another order.[47] And CCP suggests that attorneys' fees may be recovered as "consequential damages."[48] This is also incorrect, because there is a general attorneys' fees provision in the Lease Agreement and a specific attorneys' fees provision in Section 29.

## VI.   ISSUES SUGGESTED BY DAMAGES DISCLOSURE

The CCP damages disclosures[49] which were key in the argument on this motion suggest the need to for CCP to identify the cause of action in the Complaint supporting each claimed amount, and the Section of the Lease Agreement supporting contract claims. Also, CCP must disclose the basis or bases for attorneys' fee liability, if any, for each item of damages.

The presentation of damage calculations with large lump sums and credits also suggests that a detailed itemization of accrual of claimed expenses and payments will, if possible, help analysis. For example, Sixth Supplement to Rule 26(a)(1) at 4 deducts the $681,419.86 Milliken reimbursed CCP for the approximately $1.3 million in damages without explaining which categories of claimed damages that Milliken was paying off. Trial presentations must enable analysis of the inception of each claimed default, payments made on that default, and when CCP placed that matter in the hands of an attorney.

---

[47] Memorandum Decision and Order Granting in Part and Denying in Part Milliken's Motion in Limine No. 5 To Exclude Evidence of CCP's Alleged Waste Damages, docket no. 110, filed June 3, 2024.

[48] 108 Opposition at 12-13.

[49] Exhibits B, C, and D to 81 Motion.

## VII.   ORDER

IT IS HEREBY ORDERED that the 81 Motion[50] is DENIED and the 71 Motion[51] is GRANTED.

As a matter of trial management:

IT IS FURTHER ORDERED that:

**Phased Trial:** The first phase of trial starting June 25 will consider only CCP's claims for damages and predicate entitlement to attorneys' fees under the provisions of the Lease Agreement. No issues arising under Utah Code Ann. § 78B-5-826 shall be presented at the first phase of trial.

After conclusion of presentation of evidence and argument at the first phase of trial, preliminary findings will be made on CCP's claims for damages and predicate entitlement to attorneys' fees by fulfilment of any Lease Agreement preconditions. A second phase of the trial, immediately after the first phase, will consider additional evidence and argument on issues inherent in attorneys' fee awards; issues arising under Utah Code Ann. § 78B-5-826; and any amount of attorneys' fees to be awarded.

**Trial Preparation:** Trial preparation materials will be distinct for the first and second phases. Specifically, the draft Findings of Fact and Conclusions of Law required by the Trial Order (and any trial brief) will be presented separately for each phase of the trial. And a separate supplemental exhibit and witness list will be prepared by each party for the second phase of the trial. Exhibits marked or introduced in the first phase of trial must not be listed in the second phase exhibit list but may be used in the second phase.

---

[50] Motion In Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees, docket no 81, filed May 15, 2024.

[51] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs, docket no. 71, filed May 15, 2024.

Draft Findings of Fact and Conclusions of Law, any trial brief, and the separate supplemental exhibit and witness list for the second phase of the trial must be filed on or before June 20, 2024. These may be supplemented at the end of the first phase of trial.

**Supplemental Damages Disclosures:** On or before June 14, 2024, CCP will file a Supplemental Damages Disclosure consistent with the observations in this order.

Signed June 4, 2024.

BY THE COURT

David Nuffer
United States District Judge