THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COMMERCE COMMERCIAL PARTNERS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MILLIKEN & COMPANY, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART CCP'S REQUEST FOR 10% LATE FEES**<br><br>Case No. 4:22-cv-00020-DN<br><br>District Judge David Nuffer |

A trial of Phase 1 issues was held in June and July 2024, and a post-trial order was entered that decided some of the liability issues.[1] One of the issues not resolved is the determination of late fees related to CCP's claims. CCP did not file a memorandum in support of its late fee claim, but it did file an Exhibit at the close of trial that explained CCP's requested liability and damages calculation, including information about late fees.[2] Milliken filed a memorandum in opposition to CCP's late fee claims.[3] Based on the parties' memoranda and evidence in the record, CCP's request for 10% late fee for its claims is GRANTED IN PART and DENIED IN PART.

---

[1] Memorandum Decision at the End of Evidence in Phase 1 of Trial ("Post-Trial Order"), docket no. 149, filed July 4, 2024.

[2] Court's Exhibit 1: CCP's Requested Liability and Damages Calculation ("CCP's Damages Calculation"), docket no. 164, filed July 11, 2024.

[3] Defendant's Post-Trial Brief re: Accrual Date and Amounts for Late Fees ("Milliken Memo"), docket no. 171, filed August 2, 2024.

## BACKGROUND

CCP claimed entitlement to a 10% late fee for the sums due for the: (1) the mezzanine repair claim, (2) phase 2 repair claim, (3) property taxes, (4) rent abatement, and (5) loading dock repair.[4] Milliken opposes all of CCP's late fee claims.[5]

### A. Mezzanine Repairs

CCP's Damages Calculation claims $38,683.60 in late fees for its $386,836.03 claim for mezzanine repairs.[6] Milliken argues CCP's claim is unjustified because the parties resolved the mezzanine claim by a preliminary settlement, and it was not litigated to conclusion.[7] Neither of these reasons bear on the liability for late fees. The Lease Agreement states:

> **SECTION 29. Default:** In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord, a late fee equal to ten (10%) percent of the amount past due shall be assessed and shall become immediately due.[8]

To summarize, the 10% late fee provision is breached by the Tenant if: (1) Tenant owes a rental or other sum to the Landlord; (2) Landlord makes a written demand for the default; and (3) Tenant fails to remedy the default by payment within ten days of the notice.

Milliken also argues that (1) Milliken voluntarily agreed to pay 100% of the mezzanine repair costs even though the repairs to the mezzanine included improvements that were not Milliken's responsibility;[9] (2) given the resolution of the mezzanine repair claim was made by a

---

[4] CCP's Damages Calculation at 1. The parties agree that the Mezzanine Repairs were $386,836.03. CCP's Damages Calculation at 1; Milliken Memo at 1-2.

[5] Milliken Memo at 1-3.

[6] CCP's Damages Calculation at 8.

[7] Milliken Memo at 1.

[8] Lease Agreement, Stipulated Exhibit 1 at 8.

[9] Milliken Memo at 1.

voluntary payment by Milliken, CCP is not entitled to any late fee for this claim;[10] (3) CCP overstates its claim because Milliken paid $275,000 of the costs in advance of any mezzanine repairs and CCP cannot recover a late fee for this portion of the mezzanine repairs;[11] and (4) *at most* CCP is entitled to a late fee of the remaining balance of $111,836.03 which is $11,183.60.[12]

Milliken failed to establish that CCP agreed to waive or settle its late fee claim when it accepted the $386,836.03 in payments for the mezzanine repairs. "To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it."[13] "[W]aiver is an intensely fact dependent question."[14] "[A] fact finder should assess the totality of the circumstances to determine whether the relinquishment is clearly intended."[15] Milliken did not cite to any evidence in the record that CCP waived or settled its late fee claim, and Milliken's arguments to the contrary are unpersuasive.

The evidence in the record establishes that Milliken breached the 10% late-fee provision from the Lease Agreement for the mezzanine repairs.

CCP is seeking a 10% late fee the $386,836.03 in mezzanine repairs.[16] On January 28, 2021, Milliken paid $275,000 toward the mezzanine repairs leaving a balance of $111,836.03.[17] CCP provided Milliken with a written 10-Day Notice of default on May 28, 2021, and this notice was only for the remaining $111,836.03 in mezzanine repairs.[18] While CCP did provide Milliken

---

[10] *Id.* at 1.

[11] *Id.* at 2.

[12] *Id.*

[13] *Geisdorf v. Doughty*, 972 P.2d 67, 72 (Utah 1998).

[14] *IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 196 P.3d 588, 594 (Utah 2008) (internal quotations omitted).

[15] *Geisdorf*, 972 P.2d at 72.

[16] CCP's Damages Calculation at 8.

[17] *Id.* at 1.

[18] *Id.* at 1-2 (citing Stipulated Exhibit 152 "CCP hereby submits its request and support documentation for Milliken's payment of an additional $144,061.25, which is to be paid within 10 business days from today."). The

with written notice of the mezzanine repairs five times before the first payment on January 28, 2021, none of these five notices constitute a written demand for an amount due, which is required for a 10% late fee according to Section 29 of the Lease Agreement.[19] Milliken paid the remaining balance of $111,836.03 on March 2, 2022, which is months after it received the 10-Day Notice of default.[20]

CCP is only entitled to a late fee of $11,183.60 because the balance of the mezzanine repairs was only $111,836.03 when CCP sent its 10-Day Notice of default on May 28, 2021. The earlier letters and notices of repair are insufficient to satisfy the Lease Agreement's Section 29 because these earlier notices did not demand an amount for costs that Milliken owed CCP. Milliken breached Section 29 of the Lease Agreement by failing to pay the balance within 10 days of receiving a written demand, and Milliken shall pay Late Fees for the Mezzanine Repairs in the amount of $11,183.60.

### B. Phase 2 Repairs

CCP's Damages Calculation claims a 10% late fee for the $296,053.79 in Phase 2 Repairs.[21]

---

parties agree the unpaid balance of the mezzanine repairs on May 28, 2021, was $111,836.03. CCP's Damages Calculation at 1-2; Milliken Memo at 1-2.

[19] CCP's Damages Calculation at 1-2; Stipulated Exhibit 23 (stating that CCP wanted Milliken to restore the Leased Premises to its pre-lease condition before the term of the lease ended); Stipulated Exhibit 24 (stating that Milliken must have the building in its original state by the expiration of the lease on June 1, 2021, and the replacement of the mezzanine needs to occur ASAP); Stipulated Exhibit 31 (stating that Milliken must immediately begin repairing the Leased Premises or CCP's contractor would begin repairs); Plaintiff's Exhibit 304 (stating that CCP needs to have the building ready by June 1, 2021, or face a penalty); Stipulated Exhibit 36 (stating CCP is in the process of getting a commercial contractor for the mezzanine repairs); Stipulated Exhibit 41 at 3-4 (issuing a written demand on Milliken to provide CCP with a detailed construction plan and timeframe for the mezzanine repair within 30 days of receipt of this letter).

[20] CCP's Damages Calculation at 2.

[21] *Id.* at 8. The parties agree that the Phase 2 repairs were $296,053.79. CCP's Damages Calculation at 2, 8; Milliken Memo at 2.

Milliken argues there should not be a late fee for the Phase 2 Repairs because the parties engaged in a partial settlement and Milliken paid $257,656.96 in advance of any repairs being made. For the reasons listed in Section A., Milliken's partial payment toward the Phase 2 Repairs *principal cost* did not constitute a payment, settlement, or waiver of the *late fees* for the Phase 2 Repairs.

As to Milliken's second argument, Milliken is correct that CCP is only entitled to a 10% late fee for $38,396.83 in Phase 2 costs. On April 8, 2021, CCP sent Milliken a 30-Day Notice to Repair for the $571,816.30 in repairs, and Milliken made a partial payment to CCP of $257,656.96 for the Phase 2 Repairs on May 5, 2021.[22] However, CCP's 30-Day Notice to Repair from April 8, 2021, is *not sufficient* to trigger the Lease Agreement's Section 29 provision for Default because Section 29 requires that CCP make a *demand for payment* to trigger the 10% late fee.[23] CCP's 30-Day Notice to Repair demanded that Milliken: (1) *respond* to each line item for the estimate of Phase 2 repairs and *explain* whether Milliken agreed with the allocation of payment responsibility;[24] and (2) *provide a schedule* for Milliken to complete its work on the Phase 2 Repairs.[25] Neither of these two demands from the 30-Day Notice are a demand that Milliken make a payment for the specific costs for the Phase 2 Repairs.

---

[22] Stipulated Exhibit 118 at 4 (stating that Milliken owed $571,816.30 for unspecified repairs); CCP's Damages Calculation at 10 (stating that Milliken paid $257,656.96 for Phase 2 repairs on May 5, 2021); Milliken Memo at 2 (stating Milliken paid $257,656.96 toward the Phase 2 repairs and Milliken should only be required to pay a late fee on the unpaid balance of $38,396.83).

[23] Lease Agreement, Stipulated Exhibit 1 at 8 ("**SECTION 29. Default:** In the event any payment of rental or other sum due hereunder is not paid as and when due and Tenant fails to cure such default within ten (10) days after written demand from Landlord, a late fee equal to ten (10%) percent of the amount past due shall be assessed and shall become immediately due.").

[24] Stipulated Exhibit 118 at 2 ("Please review this Phase 2 repair estimate and let me know, line item by line item, whether Milliken agrees to CCP's allocations of payment responsibility.").

[25] *Id.* at 3 ("In accordance with the parties' Lease Agreement, demand is hereby made upon Milliken to provide CCP with a detailed construction scope of work and timeframe/schedule to complete all Phase 2 repairs allocated to Milliken, in whole or in part, as reflected in the attached Phase 2 repair estimate or as otherwise agreed to by CCP within thirty (30) days following your receipt of this letter.").

CCP did not make its first 10-Day Demand for the remaining balance due until January 21, 2022, and Milliken did not make payment for this demand until March 2, 2022.[26] Milliken's failure to pay this demand for more than ten days after this 10-Day Demand was received triggered the 10% late fee provision in the Lease Agreement's Section 29. CCP is entitled to a 10% late fee on $38,396.83 in Phase 2 Repairs, which is $3,839.68 in late fees.

C. Property Taxes

CCP's Damages Calculation claims a 10% late fee for the $19,098.48 in property taxes.[27] Milliken notes that it paid the full amount of taxes on March 2, 2022, after it received CCP's demand letter on January 21, 2022.[28] Milliken breached the Lease Agreement's Section 8 by failing to pay the property taxes on the last day the property taxes were due without penalty which was November 30, 2021.[29] Additionally, Milliken breached the Lease Agreement's Section 29 by failing to pay the property taxes within ten days of receiving the demand on January 21, 2022. This demand triggered the late fee. Milliken shall pay CCP $1,909.85 in late fees for the Property Taxes.

---

[26] CCP's Damages Calculation at 4; Stipulated Exhibit 193 at 1-5. CCP sent seven earlier written notices for the Phase 2 repairs, but none of these written notices constitute a demand for a specific amount owed to CCP. Stipulated Exhibit 23 (stating that CCP wanted Milliken to restore the Leased Premises to its prelease condition before the term of the lease ended); Stipulated Exhibit 24 (stating that Milliken must have the building in its original state by the expiration of the lease on June 1, 2021, and the replacement of the mezzanine needs to occur ASAP); Stipulated Exhibit 31 (stating that Milliken must immediately begin repairing the Leased Premises or CCP's contractor would begin repairs); Plaintiff's Exhibit 304 (stating that CCP needs to have the building ready by June 1, 2021, or face a penalty); Stipulated Exhibit 36 (stating CCP is in the process of getting a commercial contractor for the mezzanine repairs); Stipulated Exhibit 97 (stating CCP deems Milliken to be in breach of the Lease Agreement, demanding that Milliken provide CCP with a schedule to repair the concrete wall within 30 days of the receipt of this letter, and failing to provide a response by CCP's deadline constitutes a breach of the Lease Agreement); and Stipulated Exhibit 118 (demanding that Milliken explain whether it agrees with the estimates and allocations of payment responsibility for the Phase 2 Repairs; and demanding that Milliken provide CCP with a detailed construction plan for all Phase 2 Repairs).

[27] CCP's Damages Calculation at 6.

[28] Milliken Memo at 2.

[29] CCP's Damages Calculation at 6.

### D. Rent Abatement

CCP's Damages Calculation claims a 10% late fee for the $86,475.77 in Rent Abatement.[30] Milliken argues that CCP is not entitled to a late fee for the Rent Abatement claim because the claim did not arise until after the lease expired and because Milliken was only found liable for 75% of the $115,301.03 rent abatement claim that CCP asserted at trial.[31]

On January 21, 2022, CCP sent Milliken a 10-Day Notice that demanded that CCP pay the $115,301.03 rent abatement claim within the ten days. Milliken ignored this notice and did not pay *any* portion of this claim. Section 29 of the Lease Agreement does not require that a written demand be exact.[32] The Milliken memo did not provide any reasoning or legal authority to support the two arguments it made in opposition to this claim. If Milliken had paid any amount toward this claim within ten days of the demand, that much of the late fee would have been avoided. Milliken shall pay CCP $8,647.58 in late fees for the rent abatement claim.

### E. Concrete Loading Dock

CCP's Damages Calculation claims a 10% late fee for the $31,280.00 for Loading Dock Repairs.[33] CCP notes that it first gave Milliken written notice of this claim in its initial disclosure on July 12, 2022.[34] Milliken argues that CCP is not entitled to a late fee for the Loading Dock claim because CCP never mentioned this claim to Milliken during the entire time that it

---

[30] *Id.* at 8.

[31] Milliken Memo at 3.

[32] Lease Agreement, Stipulated Exhibit 1 at 8.

[33] CCP's Damages Calculation at 8.

[34] *Id.* at 7 (citing Stipulated Exhibit 198).

negotiated with Milliken about repairs.[35] Milliken states that CCP never made a written demand for payment for the Loading Dock claim as required by Section 29 of the Lease.[36]

CCP's written initial disclosure dated July 12, 2022, is a written demand under Section 29 of the Lease Agreement.[37] The initial disclosure states that CCP was seeking $34,065.00 for damages to the loading dock.[38] This number was subsequently reduced to $31,280.00 but Section 29 of the Lease Agreement does not require that a written demand be exact.[39] If Milliken had paid any amount toward this claim within ten days of the demand, that much of the late fee would have been avoided. Milliken shall pay CCP $3,128.00 for the late fee for the loading dock.

## CONCLUSION

1. **Late Fees for Mezzanine Repairs:** CCP is entitled to Late Fees for the Mezzanine Repairs in the amount of $11,183.60.

2. **Late Fees for Phase 2 Repairs:** CCP is entitled to Late Fees for the Phase 2 Repairs in the amount of $3,839.68.

3. **Late Fees for Unpaid Property Taxes:** CCP is entitled to Late Fees for the Unpaid Property Taxes in the amount of $1,909.85.

4. **Late Fees for Rent Abatement:** CCP is entitled to Late Fees for the Unpaid Property Taxes in the amount of $8,647.57.

---

[35] Milliken Memo at 3.

[36] Milliken Memo at 3.

[37] Stipulated Exhibit 198 at 15.

[38] *Id.*

[39] Lease Agreement, Stipulated Exhibit 1 at 8.

5. **Late Fees for Concrete Loading Dock:** CCP is entitled to Late Fees for the Concrete Loading in the amount of $3,128.00.

Signed November 14, 2024.

BY THE COURT

_____
David Nuffer
United States District Judge