THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COMMERCE COMMERCIAL PARTNERS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MILLIKEN & COMPANY, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON ATTORNEYS' FEES AND COSTS**<br><br><br>Case No. 4:22-cv-00020-DN<br><br>District Judge David Nuffer |

Trial was to proceed in two phases, with the second phase dealing with attorneys' fees.[1]

Near the end of the bench trial in the first phase, a memorandum decision advised the parties of "the fact findings and conclusions made" to that point.[2] Then, several post-trial orders (including formal findings of fact and conclusions of law on the bench trial) resolved some of the issues still in dispute.[3]

The parties now present the issue of attorneys' fees. Plaintiff Commerce Commercial Partners ("CCP") filed a Motion seeking reimbursement of its attorneys' fees.[4] Defendant

---

[1] Memorandum Decision and Order Denying Milliken's Motion in Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees and Granting [71] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs, docket no. 111, filed June 4, 2024.

[2] Memorandum Decision at the End of Evidence in Phase 1 of Trial ("Phase 1 Order"), docket no. 149, filed July 4, 2024.

[3] Memorandum Decision and Order Granting in Part and Denying in Part CCP's Request for 10% Late Fees ("Late Fee Order"), docket no. 177, filed November 14, 2024; Memorandum Decision and Order Granting Plaintiff's Request for Prejudgment Interest ("Prejudgment Interest Order"), docket no. 178, filed November 14, 2024; Findings of Fact Conclusions of Law (Trial Phase 1) ("FFCL"), docket no. 179, filed November 15, 2024.

[4] Trial Phase 2: Plaintiff's Motion for Attorney Fees and Costs and Supporting Memorandum ("CCP's Motion"), docket no. 186, filed December 17, 2024.

Milliken filed its own Motion for Attorneys' Fees in response.[5] Based on the parties' Lease Agreement,[6] previous rulings, filings on these motions, and evidence in the record, CCP's Motion for Attorney's Fees is granted in part and denied in part and Milliken's Motion for Attorney's Fees is granted in part and denied in part.

---

[5] Trial Phase 2: Defendant's Brief on Phase 2 Trial Issues and Motion for an Award of Attorney Fees and Costs under Utah Code Ann. §78B-5-826 ("Milliken's Motion"), docket no. 189, filed January 16, 2025.

[6] CCP's Exhibit 1, Lease Agreement, docket no. 2-1, filed March 29, 2022.

**Contents**

I.      BACKGROUND ................................................................................................ 4
    A.    CCP and Milliken's 15-year leasing relationship ................................... 4
    B.    CCP's discovers the substantial damages to the Leased Premises and  has trouble getting Milliken to commit to a timetable for repairs .............................................. 5
    C.    Milliken intentionally causes the repairs to be delayed to give  Gibbs International more time to sell its equipment .................................................................. 7
    D.    CCP and Milliken make three interim agreements on repairs, and Milliken obstructs the repair process by breaking its promises for the repairs .................. 10
    E.    CCP agreed to a rent abatement with the new tenant because  the repairs were not completed in time ........................................................................... 12
II.     PREVIOUS ORDERS IN THIS LITIGATION ............................................. 13
    A.    Phase 1 Order Liability Determinations ................................................. 14
    B.    Findings of Fact and Conclusions of Law ............................................. 14
        1.    Damages Summary .................................................................... 16
        2.    Milliken's Payments ................................................................. 16
III.    LEGAL STANDARD ..................................................................................... 16
IV.     DISCUSSION ................................................................................................. 17
    A.    CCP properly categorized its attorneys' fees ........................................ 18
    B.    CCP is entitled to recover attorneys' fees for fees incurred  related to the maintenance and repairs ........................................................................... 21
    C.    CCP may not recover all of the attorneys' fees for five billing entries  that contain legal work for dismissed claims ...................................................... 24
    D.    CCP's requested attorneys' fees are reasonable .................................... 26
    E.    CCP is entitled to recover attorneys' fees for its rent abatement claim ............... 31
    F.    CCP is entitled to recover attorneys' fees for its loading dock claim .................. 33
    G.    CCP is entitled to recover attorneys' fees for the costs  Milliken reimbursed CCP before the litigation was initiated |(i.e., the mezzanine, tilt-up wall, and Phase 2 Repairs) ....................................................................................... 36
    H.    CCP is entitled to recover attorneys' fees for its late fee  and attorneys' fee claims ....................................................................................................... 38
    I.     Milliken is not entitled to recover its fees and costs under Utah's reciprocal fee statute because CCP was the prevailing party in this litigation ........................... 39
    J.     CCP established it is entitled to attorneys' fees under the terms  of the Lease Agreement .................................................................................... 42
    K.    CCP is entitled to recover its costs under Federal Rule of Civil Procedure 54(d)(1) and Section 29 of the Lease Agreement,  and Milliken is not entitled to recover its costs ..................................................................................................... 44
V.      ORDER ............................................................................................................ 45

## I.    BACKGROUND

This lawsuit arises from a tenant's breach of a Lease Agreement for an industrial building. The landlord, Commerce Commercial Partners ("CCP") claimed tenant Milliken & Company ("Milliken") caused extensive damage.[7] CCP sued Milliken alleging Milliken: (1) damaged CCP's property and fixtures on the Leased Premises; (2) forced CCP to forgo two months of rent with a new tenant because CCP needed to complete extensive repairs on the Leased Premises; and (3) caused CCP to incur attorney's fees by refusing to pay for some of its obligations under the Lease Agreement.[8] Before analyzing the parties' competing Motions for Attorneys' Fees, this order will recap the parties' relationship and controversy.

### A.  CCP and Milliken's 15-year leasing relationship

1.      Milliken was the commercial tenant of an industrial building ("the Leased Premises") from May 9, 2006, until May 31, 2021, which was approximately 15 years.[9]

2.      In November 2018, Milliken notified CCP that it would not renew its lease, and the final day under the Lease Agreement would be May 31, 2021.[10]

3.      Milliken ceased its manufacturing operations at the leased premises in June 2019, but Milliken continued to pay rent to CCP through the end of the Lease Agreement term on May 31, 2021.[11]

---

[7] Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment ("Summary Judgment Order") at 1, docket no. 69, filed February 23, 2024.

[8] Memorandum Decision and Order on Milliken's Motion for Partial Summary Judgment ("Summary Judgment Order") at 1, docket no. 69, filed February 23, 2024.

[9] Summary Judgment Order ¶¶1, 3 at 3.

[10] FFCL ¶150 at 36; Summary Judgment Order ¶4 at 3.

[11] FFCL ¶¶146-47 at 35.

**B. CCP's discovers the substantial damages to the Leased Premises and has trouble getting Milliken to commit to a timetable for repairs**

4.      In July 2019, the corporate representative of CCP, Kjeld Hestehave ("Hestehave"), inspected the Leased Premises with a corporate representative of Milliken, Paul Dodd ("Mr. Dodd").[12]

5.      This visit was the first time Hestehave had walked the plant floor since Milliken's leasehold began in 2006.[13]

6.      Hestehave could see the Leased Premises needed significant repairs, and the damages included the heavily rusted mezzanine, damage to the cement floors, maintenance of dock doors and levelers, bathrooms, penetrations in the tilt-up concrete walls of the Premises, and various other items.[14]

7.      Milliken was made aware that the premises needed significant repairs in July 2019.[15]

8.      During a meeting with Mr. Dodd, Hestehave understood that Milliken intended to do as little restoration work as possible and he was going to have some real issues with Milliken and the repairs for the Leased Premises.[16]

9.      In late 2019 and early 2020, CCP attempted to get a restoration plan and timeline from Milliken no less than six times but was unable to get a satisfactory response.[17]

---

[12] FFCL ¶156 at 37.

[13] FFCL ¶157 at 37.

[14] FFCL ¶159 at 38.

[15] FFCL ¶160 at 38.

[16] FFCL ¶168 at 40.

[17] FFCL ¶169 at 40 ("Prior to hiring counsel, CCP attempted to get a restoration plan and timeline from Milliken in late 2019 and early 2020 no less than six (6) times but was unable to get a satisfactory response.").

10.     Hestehave believed from his discussion with Mr. Dodd in July 2019 that Milliken's equipment would be out of the leased premises by the end of 2019, but in October 2019, Mr. Dodd stated that he suspected the equipment would be out of the premises by March/April 2020. [18]

11.     At the end of October 2019, Mr. Dodd stated that Milliken now expected the equipment to be removed from the building by August 2020. [19]

12.     On January 12, 2020, Hestehave sent a letter to Milliken that stated the Leased Premises needed to be restored to its pre-lease condition, and these repairs should start immediately; requested that Milliken put together a plan and timeline for the restoration of the building ASAP; and asked whether Milliken had a buyer for its idled equipment. [20]

13.     On February 5, 2020, Hestehave notified Milliken that: (1) CCP intended to enter into a long-term lease with a successor tenant; (2) the new tenant would take possession of the premises on June 1, 2021; (3) there would be a large penalty if the leased premises was not ready by June 1, 2021; (4) the repairs to the premises must commence ASAP; (4) CCP needed a schedule from Milliken when the repairs would start and finish; and (5) CCP needed a response by February 12, 2020, if Milliken had other plans for the premises. [21]

14.     Hestehave sent a follow-up email on February 27, 2020, and again asked for a schedule of repairs stating that he believed the repairs would take at least six months to complete. [22]

---

[18] FFCL ¶¶170-71 at 40.

[19] FFCL ¶173 at 41.

[20] FFCL ¶178 at 42.

[21] FFCL ¶180-81 at 43.

[22] FFCL ¶182 at 43-44.

15.    Two months later, still having heard nothing, Hestehave again emailed Mr. Dodd on April 7, 2020, about a lender's inspection and also stated: "I have not seen a schedule from you as to the repair of the building. I need this ASAP."[23]

16.    Two days later, Mr. Dodd responded that Milliken was investigating some issues with the Mezzanine.[24]

17.    On May 28, 2020, Hestehave sent an email to Mr. Dodd that stated:

We are down to a drop dead date on the repair of the building. Work needs to proceed. I have the company ready to start and cannot wait any longer. The damage will amount to [m]illions of dollars. I've communicated this several times in emails. You either proceed or I will have my guy start and bill you.[25]

18.    On May 29, 2020, Mr. Dodd responded with a formal email that stated: (1) Milliken would comply with the lease; and (2) Milliken did not authorize CCP to begin repairs on Milliken's behalf or at Milliken's cost.[26]

19.    In June 2020, CCP decided to hire an attorney due to Milliken's persistent refusal to promptly commence making repairs to the Premises and repeatedly ignoring CCP's multiple requests for a scope of repairs and timeline.[27]

### C.  Milliken intentionally causes the repairs to be delayed to give Gibbs International more time to sell its equipment

20.    Milliken had contracted with Gibbs International, Inc. ("Gibbs"), a used textile equipment broker, to sell and remove Milliken's machinery from the Premises.[28]

---

[23] FFCL ¶183 at 44.

[24] FFCL ¶184 at 44.

[25] FFCL ¶185 at 44.

[26] FFCL ¶186 at 44.

[27] FFCL ¶¶191-92 at 46.

[28] FFCL ¶198 at 47.

21.     CCP was not aware of or involved in any dealings between Milliken and Gibbs, though Milliken's and Gibbs' relationship substantially affected Milliken's performance of the Lease Agreement obligations to repair and vacate.[29]

22.     While CCP attempted to get Milliken to schedule repairs to the Premises, Milliken wanted to use the Premises to stage its equipment for resale because used manufacturing equipment sells for a higher price if it has not been broken down and moved from where it was used.[30]

23.     On October 29, 2019, Milliken sold its equipment to Gibbs for $2,500,000.[31]

24.     Milliken and Gibbs initially agreed to remove the equipment by June 30, 2020, but that was later extended to December 2020.[32]

25.     Milliken sought to have Gibbs reimburse Milliken for a portion of Milliken's monthly lease payments to CCP in exchange for the six-month time extension, and Gibbs agreed to cover a portion of Milliken's monthly payments.[33]

26.     In August 2020, CCP proposed to Milliken that they use Watts Construction ("Watts") as the general contractor to manage all repairs to the Premises.[34]

27.     Watts provided all of the information requested by Milliken on or before August 21, 2020, the receipt of which was confirmed by Milliken's in-house counsel.[35]

---

[29] FFCL ¶198 at 47-48.

[30] FFCL ¶148 at 36.

[31] FFCL ¶199 at 48.

[32] FFCL ¶¶200-201 at 48.

[33] FFCL ¶¶204-205 at 49-50.

[34] FFCL ¶228 at 57.

[35] FFCL ¶228 at 57.

28.     Milliken's in-house counsel asked for a delay and proposed setting up a site visit "during the week of August 31 or the following week."[36]

29.     On September 4, 2020, CCP's attorney sent Milliken's in-house counsel an email that stated:

> We need to continue making forward progress with the parties' engineers and scheduling a visit for Watts Construction to compile a detailed bid for all of the necessary repair work. Please update me with your progress in scheduling this site visit ASAP but no later than the end of the workday on Tuesday, September 8.[37]

30.     On September 8, 2020, Milliken's in-house counsel asked for another delay, and he stated:

> Greg – we have been working on this. We had our own structural engineer inspect the location and will have a report early next week (we would have had it this week but he's out on vacation). Once you get that, we can discuss and set up any site visits that we agree are necessary.[38]

31.     Milliken made various token efforts to seek its own contractors, and these efforts caused weeks of delays.[39]

32.     Milliken's efforts to seek its own contractors were more likely motivated only by its expressed intention to buy Gibbs more time to sell and remove the equipment from the premises.[40]

33.     Milliken told Gibbs: "We will push for you long as we can." We are "trying to continue to buy more time to work your 'magic.'"[41]

---

[36] FFCL ¶228 at 57.

[37] FFCL ¶230 at 57.

[38] FFCL ¶231 at 57-58.

[39] FFCL ¶109 at 136.

[40] FFCL ¶111 at 136.

[41] FFCL ¶111 at 136.

34.     Milliken wasted approximately five months proposing alternative general contractors to Watts, but these other contractors proved to be unlicensed, unqualified (which CCP learned with simple and quick research, as is apparent from the timing of the emails), or uninterested in the project.[42]

35.     Milliken denied CCP access to the premises to improve its ability to sell machinery and other equipment through or to Gibbs, placing Milliken's interests above CCP's justified expectations.[43]

36.     Gibbs removed the equipment of value in December 2020, but left a substantial portion of the equipment it did not want on the premises.[44]

37.     After spending months about five months of refusing to use Watts as a general contractor, Milliken finally agreed to use Watts as the general contractor for the Phase 1 Repair in January 2021.[45]

### D.  CCP and Milliken make three interim agreements on repairs, and Milliken obstructs the repair process by breaking its promises for the repairs

38.     In January 2021, with neither party admitting to liability regarding the costs and repairs to the premises, the parties came to an interim understanding on the mezzanine repairs.[46]

39.     In this first interim document, Milliken agreed to: (1) advance $275,000 towards an estimated $340,000 repair cost for the mezzanine ("first payment"); and (2) use Watts

---

[42] FFCL ¶109 at 136.

[43] FFCL ¶107 at 135.

[44] FFCL ¶210-211 at 50-51.

[45] FFCL ¶274 at 70; FFCL ¶109 at 136.

[46] FFCL ¶263 at 68.

Construction as the general contractor after spending five months of proposing various other contractors who were unlicensed, unqualified, or unavailable. [47]

40.     During the repair process, Milliken promised to complete various tasks (i.e., remove all hanging florescent light fixtures, replace 57 preexisting ceiling mounted sodium halide light fixtures, remove the extensive ductwork, and various other tasks) so the premises would be ready for repairs, but it failed to keep these promises, causing further delay. [48]

41.     In a second interim document, on May 4, 2021, Milliken agreed to pay CCP $322,071.20 for the Phase 2 repairs ("second payment"), and Milliken once again stated it was not admitting liability by this by payment, stating:

> We understand that this settlement is over a disputed matter, and neither sides [sic] admits to any liability but both sides preserve all arguments concerning the necessity and costs of repairs at the Premises. [49]

42.     As part of the second payment, Milliken agreed to complete various tasks (i.e., replace the 32, the six Em combos, demo the electrical cable in the lower cable trays, and make the lower cable trays safe) related to the repairs to the premises, but Milliken failed to complete any these tasks, which were ultimately completed by Watts. [50]

43.     Milliken's decision to break its promises to complete various tasks caused the repairs to be more expensive and caused further delay. [51]

---

[47] FFCL ¶263 at 68.

[48] FFCL ¶¶257 at 65, 276-77 at 71, 285-86 at 73-74, 303 at 79, 305 at 79, 308 at 80, 335 at 92.

[49] FFCL ¶312 at 81-82.

[50] FFCL ¶¶312, 315 at 82-83.

[51] FFCL ¶316 at 83.

44.     Under the third interim document, on March 2, 2022, made a partial payment related to the Phase 1 Repairs, Phase 2 Repairs, and late fees in the amount of $148,762.90 ("third payment").[52]

45.     Milliken stated it was not seeking a release in exchange for the payment.[53]

46.     However, Milliken argued in its pretrial briefing that these three written payment agreements constituted binding settlement agreements that were performed by Milliken or constituted some form of accord and satisfaction.[54]

47.     Each of the three payment documents expressly stated that no settlement or release was required in exchange for the partial payments.[55]

### E.  CCP agreed to a rent abatement with the new tenant because the repairs were not completed in time

48.     CCP's new tenant, Czarnowski, lease began on June 1, 2021, but Czarnowski was not able to fully occupy the premises as the lease had contemplated.[56]

49.     The incomplete repairs directly resulted from Watts' work evolving over time as Milliken mostly failed to perform work it had committed to perform, affecting as Watts' subcontractors for Phase 2 Repairs who initially scheduled in a certain sequence based on Milliken's initial committed timeframes.[57]

---

[52] FFCL ¶¶382, 385 at 106-108.

[53] FFCL ¶385 at 108.

[54] FFCL ¶313 at 82.

[55] FFCL ¶385 at 108.

[56] FFCL ¶¶346-47 at 97.

[57] FFCL ¶351 at 97-98.

50.    At times, Watts' subcontractors had to honor obligations to other general

contractors due to the scheduled sequence for Phase 2 Repairs being upset by Milliken's lack of

timely performance on its commitments.[58]

51.    CCP agreed to abate Czarnowski's rent for two months because the repairs were

not complete when Czarnowski's lease started, and this totaled $115,301.03.[59]

52.    Milliken caused at least two months of delay, including by the following actions

and inactions:

- hardline responses to CCP's letters;
- delays in committing to take action;
- equivocation about who would take responsibility for repairs;
- instructions to CCP to not attempt repairs;
- incremental abdication of its duty to repair;
- delays in permitting access;
- undisclosed extensions of time for the equipment buyer to occupy the premises;
- failures to complete repairs it committed to make;
- proposals of unqualified methods and contractors;
- incomplete work by Milliken contractors;
- failures to have contractors complete work on site when necessary for CCP's contractors to move ahead;
- denials of problems caused by its contractors' failures; and
- insistence on unreasonably short timeframes.[60]

## II.    PREVIOUS ORDERS IN THIS LITIGATION

Sections (II)(A)-(B) summarize the most relevant conclusions made in two post-trial

orders which provide context for the conclusions in this order on attorneys' fees.

---

[58] FFCL ¶351 at 98.

[59] FFCL ¶377 at 105.

[60] FFCL ¶380 at 105-106.

### A.    Phase 1 Order Liability Determinations

The Phase 1 Order issued on July 4, 2024, at the conclusion of evidence in the bench trial, made several liability determinations:[61] (1) Milliken breached its duty to repair and maintain the premises under the Lease Agreement's Section 16 (but the order did not state which claims applied to this breach);[62] (2) Milliken committed waste by penetrating the tilt-up walls and permitting water damage on the mezzanine;[63] (3) Milliken breached Section 16 of the Lease Agreement and was liable for failing to maintain and repair the HVAC unit;[64] (4) Milliken was liable for 75% of the rent abatement claim;[65] and (5) Milliken was liable for the 10% late fee on several items.[66]

### B.    Findings of Fact and Conclusions of Law

Findings of Fact and Conclusions of Law for Phase 1 of the Trial ("FFCL") were entered November 15, 2024,[67] after post-trial briefing and transcript review. The FFCL found:

(1) Milliken breached Section 16 of the Lease Agreement by failing to repair and maintain the premises;[68]

(2) Milliken persistently misinterpreted the Lease;[69]

(3) Milliken breached its duty to allow CCP to inspect the premises, which delayed CCP's ability to diagnose the repairs needed;[70]

---

[61] Phase 1 Order at 6-11, docket no. 149, filed July 4, 2024.

[62] Phase 1 Order at 6-7.

[63] Phase 1 Order at 8-9.

[64] Phase 1 Order at 9.

[65] Phase 1 Order at 9.

[66] Phase 1 Order at 10.

[67] Findings of Fact Conclusions of Law (Trial Phase 1) ("FFCL"), docket no. 179, filed November 15, 2024.

[68] FFCL ¶¶39, 46 at 119, 121.

[69] FFCL ¶46 at 121.

[70] FFCL ¶¶51-52, 54; 56 at 122-23.

(4) Milliken breached Section 14 of the Lease Agreement by penetrating the tilt-up concrete walls, an impairment of structural integrity prohibited by the Lease Agreement;[71]

(5) Milliken breached Section 16 of the Lease Agreement by penetrating the mezzanine in an unauthorized manner and repeatedly discharging extraordinary amounts of water on the mezzanine, which would eventually cause the mezzanine to fail;[72]

(6) Milliken breached Section 16 of the Lease Agreement and committed waste by failing to repair the loading dock that was damaged by its invitees;[73]

(7) Milliken breached Section 16 of the Lease Agreement and committed waste by failing to properly maintain the mechanical units, and Milliken is liable for the cost to remove the mechanical units;[74]

(8) Milliken failed to present evidence that CCP materially breached the Lease Agreement;[75] and

(9) Milliken is liable for the rent abatement claim because it caused the delays in repairs by failing to make repairs, failing to remove items, denying CCP access to the premises, and making token efforts to hire contractors to buy time for Milliken to get the best price out of its abandoned equipment.[76]

---

[71] FFCL ¶¶58-59, at 124.

[72] FFCL ¶61, at 124-25.

[73] FFCL ¶¶65, 69, at 125-26.

[74] FFCL ¶77, at 128.

[75] FFCL ¶82, at 130.

[76] FFCL ¶¶101, 103, 106 at 135; 109 at 136; 116 at 138.

1.    **Damages Summary**

The FFCL[77] found Milliken was found liable for the following damages:

| Subject | Principal |
|---------|-----------|
| Mezzanine | $386,836.03 |
| Phase 2 Repairs | $296,053.79 |
| Abated Rent | $86,475.77 |
| Property Taxes | $19,098.48 |
| Loading Dock | $31,280.00 |
| Late Fees | $28,708.70 |
| **Total** | **$848,452.77** |

2.    **Milliken's Payments**

Milliken made three payments to CCP for the damages Milliken caused to the leased premises. The dates and amounts of these payments were:[78]

| Date | Amount |
|------|--------|
| January 28, 2021 | $275,000.00 |
| March 5, 2021 | $257,656.96 |
| March 2, 2022 | $148,762.90 |
| Total | $681,419.86 |

Based on these credits, Milken still owed CCP damages of $167,032.91. The parties arrived at an agreed amount of prejudgment interest of $29,553.25, with stipulated per diem amounts after July 6, 2024.[79]

## III.    LEGAL STANDARD

"An award of attorney fees must be based on the evidence and supported by findings of fact."[80] The party requesting attorneys' fees "has the burden of producing evidence to buttress

---

[77] FFCL ¶129 at 141.

[78] FFCL ¶130 at 141.

[79] See Agreed Statement Regarding Prejudgment Interest Calculations, docket no. 180, filed November 26, 2024; Memorandum Decision and Order Granting Plaintiff's Request for Prejudgment Interest ("Prejudgment Interest Order"), docket no. 178, filed November 14, 2024

[80] *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998).

the requested award."[81] The requesting party must "categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees."[82]

The requested award for attorneys' fees must be reasonable, and the reviewing court must "make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions."[83] In Utah "what constitutes a reasonable fee is not necessarily controlled by any set formula."[84] The factors that determine reasonableness include: "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved."[85]

## IV.    DISCUSSION

CCP's Motion asserts that: (1) it is entitled to attorney's fees and costs under Section 29 of the Lease Agreement due to Milliken's default;[86] (2) Milliken's prevailing party analysis is not relevant to the attorney fee provision in the Lease Agreement, and this issue was already decided by the Findings of Fact and Conclusions of Law;[87] (3) CCP's Requested fees and costs are reasonable based on the lodestar method, the applicable multiplier factors, CCP's success in

---

[81] *Foote*, 962 P.2d at 55.

[82] *Foote*, 962 P.2d at 55.

[83] *Foote*, 962 P.2d at 55.

[84] *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988).

[85] *Dixie State Bank*, 764 P.2d at 989.

[86] CCP's Motion at 18-19.

[87] CCP's Motion at 19-20.

this action, and the quality of its representation;[88] and (4) CCP is also entitled to its fees and costs as the prevailing party for purposes of Fed R. Civ. P. 54.[89]

In response, Milliken's Motion argues that: (1) CCP's failure to categorize its attorneys' fees is fatal to its recovery of any fees;[90] (2) CCP cannot recover attorney fees for its choice to use a local attorney to fulfill the role of construction manager;[91] (3) CCP failed to remove billing entries relating to dismissed claims and claims it may not recover;[92] (4) CCP's requests for attorneys' fees are unreasonable;[93] (5) CCP cannot recover attorneys' fees for its rent abatement claim;[94] (6) CCP cannot recover attorney's fees for the loading dock claim;[95] (7) CCP may not recover attorneys' fees pursuit to claims that Milliken paid in full before litigation;[96] (8) CCP cannot recover attorneys' fees for the late fee claim;[97] (9) Milliken can recover attorneys' fees pursuit to the reciprocal fee statute;[98] and (10) CCP cannot recover attorneys' fees pursuant to a strict construction of the Lease Agreement.[99]

## A. CCP properly categorized its attorneys' fees

Milliken argues CCP's failure to categorize its attorney's fees is fatal to its recovery of any fees. Milliken argued CCP made "no effort to account for fees incurred in pursuit of

---

[88] CCP's Motion at 20-36.

[89] CCP's Motion at 36.

[90] Milliken's Motion at 6-7.

[91] Milliken's Motion at 7-9.

[92] Milliken's Motion at 9-10.

[93] Milliken's Motion at 10-12.

[94] Milliken's Motion at 12-14.

[95] Milliken's Motion at 14-17.

[96] Milliken's Motion at 17-19

[97] Milliken's Motion at 19-21.

[98] Milliken's Motion at 21-28.

[99] Milliken's Motion at 28-34.

categories of damages for which it has no entitlement to fees at all (including its continued pursuit of the main substantive claims for mezzanine, tilt-up wall, and other Phase 2 repairs)."[100] Milliken is mistaken. CCP sufficiently categorized its attorneys' fees in compliance with Utah law.

In Utah, the party requesting attorneys' fees must "categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees."[101] Milliken argues that CCP failed to assign any costs to the third category of fees (i.e., claims for which there is no entitlement to attorney fees) because CCP is not entitled to recovery attorneys' fees for the claims that it paid in full prior by Milliken prior to the litigation and dismissed at summary judgment.[102] Milliken is mistaken again.

The Summary Judgment Order *did not* dismiss the claims Milliken paid in full before the litigation commenced (i.e., the tilt-up repairs, mezzanine repairs, and property taxes). There was no principal balance due on the claims, but they were not dismissed. Because Milliken refused to pay the attorneys' fees incurred by CCP to obtain these payments, the claims remained.[103] The Summary Judgment Order only held that Milliken was entitled to judgment as a matter of law for the principal costs of these claims, and specifically reserved the issue of attorneys' fees on these

---

[100] Milliken's Motion at 7.

[101] *Foote*, 962 P.2d at 55.

[102] Milliken's Motion at 7-9, 17-19 ("CCP May Not Recover Attorneys' Fees in Pursuit of Substantive Claims Paid in Full by Milliken before litigation and dismissed on Summary Judgment.").

[103] Summary Judgment Order at 17 ( "Milliken is entitled to judgment as a matter of law as to the substantive costs for the mezzanine repair, tilt-up repair, and property tax claims because CCP acknowledges that Milliken fully repaid the costs for these repairs and property taxes. CCP's related claim for attorney's fees for the tilt-up repairs, mezzanine repairs, and property taxes will be analyzed separately.").

claims.[104] "CCP's related claim for attorney's fees for the tilt-up repairs, mezzanine repairs, and property taxes will be analyzed separately."[105]

CCP's Motion and exhibits on attorneys' fees sufficiently categorized its request for attorneys' fees in the first two categorizes for successful and unsuccessful claims. CCP only had to create two categories of claims because there were no attorneys' fees that fit the third category (i.e., claims for which there is no entitlement to attorney fees).[106]

CCP's filings properly categorize attorneys' fees. CCP's lead attorney Gregory Hardman filed an affidavit in support of CCP's Motion for Attorneys' fees that stated: (1) between June 2, 2020, and December 12, 2024 CCP incurred attorneys' fees for $1,013,980.80;[107] (2) CCP reduced its requested reimbursement for attorneys' fees and costs by $75,011.49 to reflect the fees and costs incurred for failed and withdrawn claims (i.e., defeasance of conduit loan, replacement of the mechanical units, and roof replacement);[108] and (3) CCP believes that it should be awarded $939,306.90 in attorneys' fees based on Milliken's conduct during this dispute and litigation.[109]

CCP filed other exhibits that assisted in categorizing its attorneys' fees by successful and unsuccessful claims. CCP's filed exhibits for this issue include: (1) an exhibit that lists the billing

---

[104] Summary Judgment Order at 17.

[105] *Id.*

[106] Section IV.G. of this Order holds that CCP is entitled to attorneys' fees for the tilt-up repairs, mezzanine repairs, and property taxes

[107] Gregory Hardman Affidavit in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Hardman Aff.") at 4, docket no. 186-1, filed December 17, 2024.

[108] Hardman Aff. at 9-10.

[109] Specifically, CCP stated the following factors justifies its request for attorneys' fees: the time and labor required, novelty and difficulty of the questions involved, the amount involved and the results obtained, Milliken's indifferent attitude toward CCP's initial efforts to obtain repairs, Milliken's failure to perform repair work it promised to perform, and Milliken's aggressive manner of defending the lawsuit which included filing a motion to disqualify counsel, opposing CCP's efforts to obtain discovery on its agreement with Gibbs International, and filing a proposed findings of act and conclusions of law that ignored provisions of the Court's previous Order. Hardman Aff. at 10-12.

entries for the $50,294.25 attorneys' fees that were removed for failed claims;[110] (2) Hardman's affidavit which states that the request for attorneys' fees should also be reduced by $24,717.24 for attorneys' fees and costs related to the conduit loan, for a total reduction of $75,011.49 in attorneys' fees;[111] and (3) redacted and unredacted billing records for the attorneys' fees that CCP incurred for successful claims.[112] CCP's requests for attorneys' fees were properly categorized under Utah law.

### B.  CCP is entitled to recover attorneys' fees for fees incurred related to the maintenance and repairs

Milliken argues CCP is not entitled to recover attorneys' fees incurred when its counsel was acting as a construction manager.[113] Milliken reasons that: (1) CCP's counsel was hired to assess the repairs that were necessary to repair the leased premises by May 21, 2021;[114] (2) lawyers are not in the business of assessing necessary repairs or remediation work in an industrial building;[115] (3) the billing entries are filled with entries of CCP's counsel acting in a construction manager role instead of a lawyer;[116] and (4) the billing entries include tasks such as meeting and calls with contractors to obtain inspections and estimates and arranging payment to

---

[110] Reduction in Attorneys' Fees Based on Summary Judgment Order, Exhibit 6, docket no. 186-10, filed December 17, 2024. CCP states that it incurred $75,011.49 in attorneys' fees and costs related to unsuccessful claims. This number can be broken down into: (1) $50,294.25 in attorneys' fees for unsuccessful claims; and (2) $24,717.24 for attorneys' fees and costs related to the conduit loan. CCP probably distinguished the conduit loan claim from the other failed claims (i.e., roof and mechanical units) because it withdrew the conduit loan claim, and while court order dismissed substantial portions of its roof repair and mechanical units claims.

[111] Hardman Aff. at 9-10; Reduction in Attorneys' Fees Based on Summary Judgment Order, Exhibit 6

[112] Unredacted Snow Jensen & Reece Billing Records June 2, 2020 – November 30, 2024, Exhibit 2, docket no. 187-1, filed December 17, 2024; Unredacted Snow Jensen & Reece Billing Records December 1, 2024 – December 12, 2024, Exhibit 3, docket no. 187-2, filed December 17, 2024; Unredacted Billing Records in Support of CCP's Trial Phase 2: Motion for Attorney Fees Holcombe Bomar, Exhibit 5, docket no. 187-4, filed December 17, 2024.

[113] Milliken Motion at 7-9.

[114] Milliken Motion at 8.

[115] Milliken Motion at 8.

[116] Milliken Motion at 8-9.

the general contractors.[117] In support of its argument, Milliken filed "Exhibit A" which is a 38-page list of billing entries that allegedly show CCP's counsel acting as a construction manager and not an attorney.[118]

Milliken's argument is not persuasive. CCP is entitled to *all attorneys' fees* that Milliken listed in Exhibit A. CCP's attorneys' work related to the construction repairs was necessary and properly considered "legal work" for several reasons.

First, prior to hiring counsel, CCP management tried to communicate with Milliken on at least six occasions to get a restoration plan and a timeline for repairs, but Milliken refused to engage.[119] The involvement of a lawyer in a dispute threatening to evolve into litigation finally provoked Milliken to engage with CCP. And when Milliken engaged, its attorney Troy Tessier "directed [CCP's lawyer] not to communicate with any Milliken employee other than me or another lawyer representing Milliken."[120] Milliken forced communication through lawyers

Second, Milliken was intentionally and covertly delaying repairs and refusing access to the premises in 2019 and 2020 (in breach of the Lease Agreement) in order to give Gibbs International more time to remove and sell Milliken's equipment for $2,500,000.[121] Milliken told Gibbs: "We will push for you long as we can. . . . [We are] trying to continue to buy you more time to work your 'magic.'"[122] CCP needed an attorney to pressure Milliken to permit it to access the premise so CCP could determine the extent of the damage, assess liability under the

---

[117] Milliken Motion at 8-9 (citing Milliken's Exhibit A, Construction Management Work Performed by Law Firm, at 2-38, docket no. 189-1, filed January 16, 2024).

[118] Milliken's Exhibit A, Construction Management Work Performed by Law Firm, at 2-38.

[119] FFCL ¶169 at 40 ("Prior to hiring counsel, CCP attempted to get a restoration plan and timeline from Milliken in late 2019 and early 2020 no less than six (6) times but was unable to get a satisfactory response.").

[120] Exhibit 40 at 4.

[121] FFCL ¶199 at 48.

[122] FFCL¶111 at 136.

Lease Agreement, and ensure repairs started soon to avoid breaching its lease with the new tenant.

Third, CCP needed an attorney to interpret and enforce the Lease Agreement against Milliken because Milliken flagrantly violated the Lease Agreement and had no hesitation to continue to violate the Lease Agreement to the detriment of CCP. It is perfectly reasonable for CCP's attorney to review photographs, cost estimates, and reports because Milliken reflexively denied any responsibility for repairs. Review of the problems in light of the Lease Agreement was necessary. Every aspect of the dispute and the construction had legal implications which needed to be communicated to Milliken.

Fourth, Milliken caused significant and cumulative delays in repairs by abdicating its duty to repair; failing to start repairs while insisting that it would perform repairs; denying that problems were caused by its contractors' failures; insisting on unreasonably short timeframes; and objecting to CCP's chosen contractors. [123] All of these actions by Milliken constitute or caused breaches of the Lease Agreement, and an attorney was need to protect CCP's interest against Milliken. Additionally, the record demonstrates that Milliken had a pattern of breaking its promises to repair and maintain, and then falsely denying responsibility for damages it caused.  CCP may recover all of the attorneys' fees listed in Milliken's Exhibit A and all similar fees for similar subject matter.

None of these fees that Milliken claims were for supervision of construction were related to difficulties with CCP's contractors, but all arose from Milliken's breaches of the Lease Agreement and its promises to repair and meet time deadlines.

---

[123] FFCL ¶¶103, 109 at 135-36.

### C.  CCP may not recover all of the attorneys' fees for five billing entries that contain legal work for dismissed claims

Milliken argues CCP's demand for attorneys' fees should be reduced because it submitted attorney billing entries for claims that were dismissed by the Summary Judgment Order.[124] Specifically, Milliken argues CCP submitted billing entries for attorneys' fees that were incurred related to the conduit loan, roof repair, swamp coolers, and mechanical unit claims despite these claims being dismissed in the Summary Judgment Order.[125] In support of its argument, Milliken filed Exhibit B which contains 24 billing entries that were allegedly incurred for the defeated claims.[126] Milliken acknowledges that CCP already withdrew approximately $75,000 in attorney's fees for dismissed and withdrawn claims.[127]

Milliken's challenges the 24 billing entries for a total of 93.1 billable hours on the grounds that these hours pertained to dismissed claims.[128] Review of all 24 billing entries shows that 5 of the 24 billing entries warrant a partial reduction. These five entries made by Greg Hardman should be reduced by one hour each because: (1) the March 18, 2024, entry for 2.7 hours includes three tasks and one of those tasks is to review the billing records for the dismissed claims;[129] (2) the March 20, 2024, entry for 3.2 hours includes five tasks and two of those tasks (one of which is revising a letter to Milliken's counsel) pertain to reviewing the billing records of

---

[124] Milliken's Motion at 9-10.

[125] Milliken's Motion at 9.

[126] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims, docket no. 189-2, filed January 16, 2025 (citing CCP's Exhibit 2, CCP's Redacted Billing Entries at 272-303, docket no. 186-6, filed December 17, 2024); CCP's Exhibit 2, Sealed Unredacted Billing Entries at 272-303, docket no. 187-1, filed December 17, 2024.

[127] Milliken's Motion at 10.

[128] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 1-7; Milliken's Motion at 9-10.

[129] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 5; CCP's Exhibit 2, Sealed Unredacted Billing Entries at 281.

dismissed claims or calculating the total adjustment in attorney's fees for dismissed claims;[130] (3) the March 28, 2024, billing entry for 2.5 hours includes two tasks and one of those tasks is creating a PDF of an Excel spreadsheet for reduction of attorneys' fees;[131] (4) the April 10, 2024 billing entry for 5.8 hours includes nine tasks and two of those tasks pertain reviewing billing for uncollectible fees;[132] and (5) the May 1st billing entry for 13.9 hours includes five tasks and one of those tasks included adjustment of an exhibit list to exclude no longer relevant exhibits.[133] To reduce these five billing entries by one hour each is a reasonable approximation based on the tasks listed in each billing entry.

The 19 other entries do not warrant a reduction. These 19 entries include tasks for revising the calculation of damages, settlement negotiations, redacting privileged information, communicating with opposing counsel, and trial preparations. While these tasks might possibly pertain to dismissed claims to a small degree, each task in question was insufficiently related to the dismissed claims to warrant a further reduction in attorneys' fees.[134]

CCP may not recover five hours of attorneys' fees for the five billing entries specified in this section. For this reason, CCP's requested attorneys' fees will be reduced by $1,750.00 to reflect these five hours that were billed at a rate of $375.00 per hour.

---

[130] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 5; CCP's Exhibit 2, Sealed Unredacted Billing Entries at 281-82.

[131] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 5; CCP's Exhibit 2, Sealed Unredacted Billing Entries at 286.

[132] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 6-7; CCP's Exhibit 2, Sealed Unredacted Billing Entries at 291-92.

[133] Milliken's Exhibit B, Billing Entries for Defeated/Withdrawn Claims at 7; CCP's Exhibit 2, Sealed Unredacted Billing Entries at 303.

[134] This order does not reduce billing entries that contained the phrase "revising calculation of damages" because several entries that included this phrase involved client communications or communications to opposing counsel and the calculations of damages are essential to case resolution. These communications had multiple purposes, which were unrelated to the dismissed claims.

### D.  CCP's requested attorneys' fees are reasonable

A requested reward for attorneys' fees must be reasonable, and the reviewing court must "make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions."[135] In Utah "what constitutes a reasonable fee is not necessarily controlled by any set formula."[136] The factors that determine reasonableness include: "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved."[137]

Milliken argues that CCP's request attorneys' fees are unreasonable because: (1) CCP's attorneys provided vague, duplicative, block billing entries, and prepared deposition summaries after the trial already begun, which it detailed in Exhibit C;[138] (2) CCP's attorneys routinely performed the administrative, clerical, and other work typically performed by paralegals, which is detailed in Exhibit D;[139] and (3) the disparity in attorneys' fees between the parties (i.e., CCP is seeking $939,306.80 in attorneys' fees whereas Milliken only incurred $359,258.50 in attorneys' fees) weighs significantly in favor of reducing CCP's award for attorneys' fees.

First, Milliken argues that CCP unreasonably billed time for creating deposition summaries after the trial began and all deposition excerpts were already submitted.[140] Milliken

---

[135] *Foote*, 962 P.2d at 55.

[136] *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988).

[137] *Dixie State Bank*, 764 P.2d at 989.

[138] Milliken's Motion at 11; Milliken's Exhibit C, Excerpts of Disputed Billing Entries, docket no. 189-3, filed January 16, 2025.

[139] Milliken's Motion at 11-12.

[140] Milliken's Motion at 11.

appears to imply that deposition summaries can only be utilized as deposition excerpts in order to be useful for an attorney at trial.[141] Milliken's argument is meritless. Deposition summaries can be utilized to efficiently review evidence in the record, prepare for the examination or impeachment of witnesses, analyze disputed claims, and countless other uses. These billing entries will not be reduced on this basis.

Second, Milliken argues that CCP engaged in block billing, which prevents it from meaningfully reviewing the billing entries.[142] Some of billing entries have multiple tasks listed in a single entry. But this is not block billing. " 'Block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[143] The Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing."[144] Similarly, Utah does not bar an award of fees if block billing is used.[145] The question is whether the "trial court in the present case ha[s] sufficient information before it in the billing records to enable" a decision.[146] The records presented are very detailed and nothing is lacking that would prevent a decision. As an example, five entries were analyzed and dealt with in IV.C. above.

Third, Milliken argues some billing entries were too vague and duplicative because the entries state that two senior attorneys met an intern to discuss the case for three hours.[147]

---

[141] Milliken's Motion at 11; Milliken's Exhibit C, Excerpts of Disputed Billing Entries, at 2-3.

[142] Milliken's Motion at 11; Milliken's Exhibit C, Excerpts of Disputed Billing Entries, at 3-22.

[143] *BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x 818, 834 (10th Cir. 2012)(cleaned up) (citing and quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.1996)).

[144] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000)

[145] *Grove Bus. Park LC v. Sealsource Int'l LLC*, 2019 UT App 76, ¶ 56

[146] *Paul Mueller Co. v. Cache Valley Dairy Ass'n,* 657 P.2d 1279, 1288 (Utah 1982).

[147] Milliken's Exhibit C, Excerpts of Disputed Billing Entries, at 24.

However, on the same day the intern drafted CCP's waste argument for the motion for summary judgment at a considerably lower billable rate than the two senior attorneys. [148] These billing entries are sufficiently clear, and these billing entries will not be reduced for vagueness or duplication.

Fourth, Milliken argues some billing entries were unreasonable because CCP's attorneys routinely performed the administrative and clerical work routinely performed by paralegals such as filing matters on CM-ECF, redacting billing entries, sending emails, and preparing exhibits. [149] Milliken filed Exhibit D in support of this argument. [150]  Milliken's Exhibit D contains 18 pages of billing entries Milliken claims contain administrative work. All of the disputed entries contain legal work that is customarily completed by attorneys. With today's highly enabling technologies, the administrative part of any task is reduced and made an easy automated conclusion to an attorney's work in composing -- and then -- sending an email, or identifying redactions to be made in a sensitive document – and then redacting it, drafting a document and then making an electronic filing, or reviewing and organizing exhibits in preparation for trial. Many of these same entries also contain core legal tasks such as reviewing emails from opposing counsel, drafting motions, and drafting reports. [151] All of these entries are reasonable.

Fifth, Milliken argues CCP's fee award should be reduced because of the disparity of fees incurred by the parties. Milliken reasons that Milliken incurred $359,258.50 in fees with its

---

[148] Milliken's Exhibit C, Excerpts of Disputed Billing Entries, at 24.

[149] Milliken's Motion at 11-12.

[150] Milliken's Exhibit D, Billing Entries for Paralegal or Administrative Work, docket no. 189-4, filed January 16, 2025.

[151] Milliken's Exhibit D, Billing Entries for Paralegal or Administrative Work at 4.

outside local litigation counsel while CCP is seeking $939,306.80 in attorneys' fees.[152]

Milliken's argument is not persuasive. First, Milliken its in-house counsel was the principal

attorney before litigation was filed and conducted a substantial portion of this litigation.

Specifically, Troy Tessier drafted briefs, acted as first chair for Milliken during the trial, and led

out in hearings.[153] In contrast, CCP does not have in-house counsel on its payroll that can

perform the work that was necessary in this litigation. Instead, CCP has to pay outside counsel

by the billable hour. Time devoted by Mr. Tessier is not in evidence. Second, CCP's case was

much more labor intensive than Milliken's since CCP had to utilize experts and meet its burden

that Milliken breached the Lease Agreement in numerous ways. Milliken was a distant party and

its principal legal work before suit consisted of obstruction and after suit was filed, that turned to

a vigorous defense on every issue. Third, Milliken created legal work for CCP before litigation

commenced by covertly and intentionally causing delays in the repairs to the Leased Premise so

Gibbs International had more time to sell its equipment for $2,500,000. Milliken breached

successive agreements to prepare premise for repairs, denied CCP access to the premise in

violation of the Lease Agreement, and blocked qualified contractors from starting repairs. The

disparity in attorneys' fees incurred by the parties reflects the parties' relative contributions to

solutions does not warrant a reduction in CCP's attorneys' fees claim.

     CCP is entitled to be granted its request for attorneys' fees because: (1) CCP substantially

prevailed in this litigation;[154] (2) the claims that CCP lost were relatively insignificant;[155] (3)

CCP efficiently litigated efficiently at discovery and trial despite Milliken consistently resisting

---

[152] Milliken's Motion at 12.

[153] Mr. Tessier signed the briefs for Milliken's Motion for Summary Judgment and its Motion for an Attorneys' Fees and Costs.

[154] CCP's Motion at 26.

[155] CCP's Motion at 27.

its obligations (and litigating this lawsuit) in an aggressive manner, which included filing an unsuccessful motion to disqualify CCP's counsel and forcing CCP to file a discovery motion to obtain fact discovery on Gibbs International's $2,500,000 sale of Milliken's equipment;[156] (4) Milliken took meritless litigation positions;[157] and (5) CCP's counsel bill at reasonable rates with Mr. Hardman billing at $415.00 per hour in July 2024 and Mr. Romney billing at $350.00 per hour in July 2024.[158]

CCP's attorneys' fees are also reasonable under the relevant Utah criteria.[159] The litigation was relatively difficult because it involved expert witnesses, a hotly disputed contract, and an aggressive litigation strategy from the defendant. CCP's attorneys litigated this matter strategically but thoroughly in light of the difficulty of the litigation and aggressive resistance by the defendant. CCP's attorneys expended a reasonable number of hours on this case given the issues, amounts in dispute, and litigation style of the defendant. CCP's attorneys charged a reasonable fee in light of their expertise, experience, and the fees charged by their competitors in the same locality. This dispute involves a relatively large amount in damages. CCP is the clear prevailing party.

---

[156] CCP's Motion at 31-33.

[157] CCP's Motion at 33-34. These unreasonable litigation positions included Milliken's theory that CCP breached Milliken's right to quiet enjoyment for trying to access the premises and that three of its partial payments constituted a release from CCP of its attorneys' fees claims. CCP's Motion at 33-34. Milliken repeatedly pressed points after rulings were already made, such as its erroneous interpretations of the Lease Agreement that unnecessarily complicated the litigation.

[158] CCP's Motion at 17, 35.

[159] The factors that determine reasonableness include: "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved." *Dixie State Bank*, 764 P.2d at 989.

### E. CCP is entitled to recover attorneys' fees for its rent abatement claim

Milliken argues CCP is not entitled to recover attorneys' fees for its rent abatement claim because this claim did not arise during the term of Milliken's Lease Agreement[160] or fall under the definition of default because it was raised by a third party after the lease was over.[161] Under Milliken's view, the rent abatement claim only arose when CCP made an agreement to abate rent for the new tenant on September 29, 2021, which is after the new tenant signed a lease on June 1, 2021.[162] Milliken concludes that the rent abatement claim cannot fall under the attorney-fee provision in Section 29 because CCP's attorneys' work for this issue does not represent the "enforcement" of the Lease Agreement "on account of Tenant's default" when the claim arose after the lease was terminated.[163]

Again, Milliken is repeating a challenge to a decision already made. Its liability for the rent abatement claim has been decided.[164] Milliken arguments fail under a simple examination of the facts. CCP warned as early as November 23, 2018, that failure to make repairs putting the building back into its "original state" was a major concern.[165]

Milliken's inactions during the lease breached the Lease Agreement and were the but-for cause of the rent abatement claim. As noted in the Phase 1 Trial Order, the record is rife with evidence that Milliken was the cause of the delays in repairs by: (1) denying responsibility for

---

[160] Milliken's Motion at 12.

[161] Milliken's Motion at 12.

[162] Milliken's Motion at 12-14.

[163] Milliken's Motion at 13 ("Put simply, the rent abatement claim arises from CCP's decision to settle a third-party claim that was not made during the term of the Lease. For that reason, it cannot fall under Section 29 of the Lease, for it cannot represent the 'enforcement' of the Lease 'on account of Tenant's default' when the claim by Czarnowski arose only after the Lease had terminated. It cannot be eligible for a late fee under Section 29 because it was never 'a sum due hereunder' (i.e., under the Lease).").

[164] Milliken Motion at 12-14.

[165] FFCL ¶150.

the cost of repairs; (2) instructing CCP not to attempt repairs; (3) refusing to allow CCP to access the premise; and (4) breaking its promises to make repairs. [166] Furthermore, Milliken's actions caused delays in repairs and debris removal during the lease term. These delays caused the rent abatement claim. Milliken's actions breached  multiple provisions of the Lease Agreement, including the obligation of *maintenance of the fixtures, equipment and appurtenances at all times at its sole cost and expense, and making all repairs of any nature thereto as and when needed to preserve the Premises in good condition*.

> **SECTION 16. Tenant Repairs and Maintenance:** *At all times during the term of this Lease* and any extension thereof, but subject to the obligations of Landlord contained herein, *Tenant shall maintain the fixtures, equipment and appurtenances thereon, and at its sole cost and expense, make all repairs of any nature thereto as and when needed to preserve the Premises in good condition.* Any modifications or alterations undertaken by Tenant shall be completed in a workmanlike and lien-free manner in accordance with all applicable codes and regulations. Subject to the obligations of Landlord contained herein, all damage or injury to the Premises and to its fixtures and appurtenances shall be repaired promptly by Tenant, at its sole cost and expense. [167]

Milliken was also bound to *leave the Premises and any improvements in operable, clean and good condition.*

> **SECTION 18. Condition Upon Termination:** On the last day of the term of this Lease or any extension thereof, or upon sooner termination, Tenant shall quit and surrender the Premises and the improvements then remaining thereon, and *Tenant shall leave the Premises and any improvements in operable, clean and good condition, ordinary wear and tear excepted.* [168]

Additionally, there is no provision in Section 29 or any other part of the Lease Agreement that bars recovery for claims or attorneys' fees if the claim peripherally involves a third-party; or

---

[166] Milliken acted in several other ways that caused delays in the repairs. Phase 1 Order at 9.

[167] Lease Agreement, Stipulated Exhibit 1, at 5 (emphasis added).

[168] Lease Agreement, Stipulated Exhibit 1 at 5 (emphasis added).

damages cannot be determined with precision until after the lease term expired. Section 29 states:

> **SECTION 29. Default:** Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or any other remedies provided by law. *In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection,* including reasonable attorney's fees, whether suit is actually filed or not. [169]

CCP is entitled to recover its attorneys' fees for the rent abatement claim.

### F.  CCP is entitled to recover attorneys' fees for its loading dock claim

Milliken argues that CCP cannot recover attorneys' fees for its loading dock claim because  this claim was never mentioned by CCP before the filing of this case in March 2022.[170] and   CCP voluntarily repaired the loading dock.

CCP's argument ignores the facts of the case, the terms of the Lease Agreement, and the Findings of Fact and Conclusions of Law. First, as noted in the Findings of Fact and Conclusions of Law, CCP investigated the cause of the loading dock damage and was misled about the cause of the damage by Milliken's plant manager, Michael Gilbert.[171] CCP then paid to repair the loading dock damage. Later, CCP learned from the deposition testimony from two of Milliken's other employees, Ms. Zimmerman and Mr. Pugliese, that Milliken's delivery drivers caused the damage to the loading dock.[172] This sequence of events explains why the loading dock claim was asserted late. The answer to Milliken's next objection explains why this does not matter.

---

[169] Lease Agreement, Stipulated Exhibit 1 at 5 (emphasis added).

[170] Milliken Motion at 14.

[171] Findings of Fact Conclusions of Law ¶66 at 125-26.

[172] Findings of Fact Conclusions of Law ¶66 at 125-26.

Milliken also claims the loading dock damage falls under Section 16 of the Lease Agreement and *required* CCP to provide notice and an opportunity for Milliken to correct the damage.[173] Further Milliken is aggrieved because an earlier order "rewrote" the Lease Agreement to permit recovery for the loading dock damages even though Milliken was never given notice and an opportunity to cure the loading dock damages.[174] This argument is a re-assertion of Milliken's earlier failed argument that it should not be liable for the loading dock damages. Milliken is not directly challenging that it should not pay attorneys' fees for the loading dock claim; but that the award of damages for the loading dock was improper.[175]

The Findings of Fact and Conclusions of Law resolved this issue by finding that Milliken breached Section 16 of the Lease Agreement with regards to the loading dock.[176] And the Lease Agreement's Section 17 makes clear that the cost of repairs to the loading dock is Milliken's responsibility since its invitees caused the damage.[177] Milliken wants to litigate this one more time – so this order will explain again.

These Sections of the Lease Agreement state:

> **SECTION 16. Tenant Repairs and Maintenance:** . . . Tenant shall maintain the fixtures, equipment and appurtenances thereon, and at its sole cost and expense, make all repairs of any nature thereto as and when needed to preserve the Premises in good condition. Any modifications or alterations undertaken by Tenant shall be completed in a workmanlike and lien-free manner in accordance with all applicable codes and regulations. Subject to the obligations of Landlord contained herein, all damage or injury to the Premises and to its fixtures and

---

[173] Milliken Motion at 14-15.

[174] Milliken Motion at 15-17 ("Here again, the Lease cannot be rewritten to expand the rights available to CCP. By making CCP eligible to recover repair expenses it chose to make without compliance with the notice and cure requirements of Section 16, the Lease is being rewritten to eliminate any notice requirement at all.").

[175] Milliken Motion at 15-17.

[176] Findings of Fact Conclusions of Law ¶65 at 125.

[177] Findings of Fact Conclusions of Law ¶65 at 125.

appurtenances shall be repaired promptly by Tenant, at its sole cost and expense.[178]

**SECTION 17. Landlord Obligations:** . . . Landlord shall have no such obligation or liability of any kind for foundation problems or deficiencies caused by Tenant or Tenant's agents, contractors, employees, or invitees.[179]

The evidence at trial clearly demonstrate that Milliken breached Section 16 of the Lease Agreement by failing to maintain and repair the loading dock, and Section 17 makes clear that the cost of repairs to the loading dock is Milliken's responsibility since its invitees caused the damage.

Milliken's argument that CCP was required to give it notice and opportunity to cure the loading dock) relies on the remedy provision of Section 16 of the Lease Agreement. Again, this is an argument Milliken has made and lost before but Milliken wants to try one more time in the context of the attorneys' fees issue. One part of Section 16 outlines a procedure to enable the Landlord to have rent non-payment remedies for failures to repair.

**SECTION 16. Tenant Repairs and Maintenance:** . . . . If Tenant should default in performance of Tenant's obligations under this Paragraph, and such default continues for more than thirty (30) days after receipt by Tenant or written notice of such default from Landlord, which notice shall specify in detail the nature of the default, Landlord may perform Tenant's obligations under this section and any amount so expended shall be deemed additional rent due Landlord under this Lease.[180]

Nothing in Section 16 states or suggests that this remedy provision is the exclusive procedure for remedies for damages that were subsequently repaired by the landlord. A duty to repair exists independently of an additional rent remedy. There is no need to provide notice of the needed repair to claim the cost of repair. CCP could not provide Milliken with a notice of default for the

---

[178] Lease Agreement at 5.

[179] Lease Agreement at 5.

[180] Lease Agreement at 5; Milliken Motion at 15.

Loading Dock repairs because Milliken's plant manager, Michael Gilbert, misled CCP on the
cause of the loading dock repairs.

Milliken's argument is again defeated by Section 29 of the Lease Agreement which states
that [p]ursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies
herein provided or any other remedies provided by law." [181] Once again, this order concludes that
Milliken is liable for the loading dock claim. And under Section 29 of the Lease Agreement,
CCP is entitled to recover its attorneys' fees incurred for by placing this issue in the hands of an
attorney. [182]

### G.  CCP is entitled to recover attorneys' fees for the costs Milliken reimbursed CCP before the litigation was initiated |(i.e., the mezzanine, tilt-up wall, and Phase 2 Repairs)

Milliken argues that CCP cannot recover attorneys' fees for the mezzanine, tilt-up wall,
and most of the Phase 2 repairs [183] because Milliken paid most of the cost of these repairs before
the litigation started. [184] Milliken's argument fails to acknowledge that while it paid the costs for
the mezzanine repair, tilt-up repair, and most of the Phase 2 repairs, it refused to admit liability
for any of these claims, and CCP never issued a release of these claims. [185]

Milliken also argues these repair claims were dismissed at summary judgment. [186] The
summary judgment order did not dismiss these claims but declared that Milliken's payments

---

[181] Lease Agreement at 8.

[182] Least at 8 ("In the event Landlord places the enforcement of all or any part of this Lease in the hands of an
attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable
attorney's fees, whether suit is actually filed or not.").

[183] Milliken acknowledges that CCP did recover $20,588.44 in Phase 2 repairs at trial. Milliken Motion at 17.

[184] Milliken Motion at 17.

[185] Findings of Fact Conclusions of Law ¶313 at 82.

[186] Milliken Motion at 17 ("CCP may not recover attorneys' fees in pursuit of substantive claims paid in full by
Milliken before litigation and dismissed on Summary Judgment.").

would apply to the principal costs of these claims. CCP agreed that Milliken paid most of the repair costs for these claims. But the summary judgment order made clear that to recover attorneys' fees and late fees CCP was still required to establish that Milliken was liable for the mezzanine, tilt-up wall, and Phase 2 Repairs claims.[187]

Milliken also argues that the vast majority of time spent at trial was devoted to rehashing these claims that were dismissed (i.e., the mezzanine repairs, tilt-up wall repairs, and property taxes).[188] Milliken could have easily avoided the need to frame the context of the dispute by paying what was due for the remaining repair cost on those claims and the attorney fees on those claims and by admitting to liability for claims of delay which were caused by Milliken's failure o make and obstruction of the mezzanine and tilt-up wall repairs.

Milliken's refusal to admit liability and the lack of waiver by CCP meant CCP had to establish liability at trial in order to recover the balance due for Phase 2 repairs, and attorneys' fees and late fees for these claims. The Findings of Fact and Conclusions of Law state that Milliken breached the Lease Agreement with regards to the mezzanine,[189] tilt-up repairs,[190] property taxes,[191] and Phase 2 Repairs.[192] CCP established that Milliken breached the Lease Agreement requiring those repairs. CCP is entitled to recover its attorneys' fees incurred to enforce the Lease Agreement for the mezzanine, tilt-up wall, and Phase 2 Repairs claims.

---

[187] Summary Judgment Order at 17 ("Milliken is entitled to judgment as a matter of law as to the substantive costs for the mezzanine repair, tilt-up repair, and property tax claims because CCP acknowledges that Milliken fully repaid the costs for these repairs and property taxes. CCP's related claim for attorney's fees for the tilt-up repairs, mezzanine repairs, and property taxes will be analyzed separately.").

[188] Milliken Motion at 18.

[189] Findings of Fact Conclusions of Law ¶61 at 124-25.

[190] Findings of Fact Conclusions of Law ¶¶58-59 at 124

[191] Findings of Fact Conclusions of Law ¶382 at 106-107.

[192] Findings of Fact Conclusions of Law ¶¶92-93 at 133.

### H. CCP is entitled to recover attorneys' fees for its late fee and attorneys' fee claims

Milliken argues the Lease Agreement does not provide for recovery for attorneys' fees incurred for pursuing attorneys' fees or unpaid late fees.[193] Milliken reasons the late fee is simply a 10% is simply a one-time 10% assessment that is triggered by default, and failure to pay the late fee is not a substantive default.[194] Late fees are due under the Lease Agreement. Milliken failed to pay the late fees. CCP litigated the late fee amounts. Attorneys' fees to collect late fees are incurred in collection of a sum due and unpaid.

Milliken also claims the failure to pay attorneys' fees is not a substantive default because it creates an absurd and infinite loop allowing the recovery of attorneys' fees for failing to pay attorneys' fees, and Milliken could never cure such a default.[195] Milliken's argument is conclusory and ignores common sense, the terms of the Lease Agreement, and Utah law.

Milliken seeks court approval of its strong-arm tactics: argue, dispute, deny, object but finally make payments in amounts that do not correspond to any demands, while reserving all rights and denying any settlement or admission has been made. By this means, the well-funded distant enterprise can maintain control and drain the creditor's patience and funds in protracted discussions and litigation. Then, to cap the strategy, Milliken insists it paid all that was owed, and should not pay fees, ignoring the efforts required to extract the payment. The creditor is supposed to walk away grateful for not having lost more. Impoverishing a creditor by refusing to pay the cost of obtaining compliance would frustrate the parties' good faith expectations of a fair

---

[193] Milliken Motion at 20.
[194] Milliken Motion at 20.
[195] Milliken Motion at 20.

and equal relationship. And it would also be a violation of the Lease Agreement providing for payment of late fees, attorneys' fees, and costs of obtaining compliance.

I.    **Milliken is not entitled to recover its fees and costs under Utah's reciprocal fee statute because CCP was the prevailing party in this litigation**

Milliken argues that Milliken should be awarded fees under the reciprocal fee statute because: (1) almost all of the substantive claims were resolved before this lawsuit was initiated;[196] (2) Milliken was the prevailing party in the lawsuit because successfully defended against $1,129,309.31, and CCP only recovered $167,032.91 at trial;[197] (3) Milliken offered CCP $183,321.10 to settle these claims on January 22, 2022, and $250,000 on February 25, 2022;[198] and (4) Milliken successfully defended against the loan defeasance claim and roof repair claims.[199]

Utah's reciprocal fee statute states a court may award any prevailing party attorneys' fees in a civil action when a written document permits at least one party to recover attorneys' fees. Specifically, the reciprocal fee statute states:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.[200]

By its terms, a prerequisite to the statute's application "is that the party requesting fees prevailed in a civil action based upon a written agreement."[201]

---

[196] Milliken's Motion at 21.

[197] Milliken's Motion at 21-22, 25, 27.

[198] Milliken's Motion at 22-23.

[199] Milliken's Motion at 26.

[200] Utah Code Ann. § 78B-5-826.

[201] *Anderson & Karrenberg v. Jerry Warnick*, 289 P.3d 600, 603 (Utah App. Ct. 2012).

"Which party is the prevailing party is an appropriate question for the trial court and depends, to a large measure, on the context of each case."[202] Courts in the state of Utah consider the following factors when determining the prevailing party:

> (1) [the] contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.[203]

CCP was the clear prevailing party in this litigation. While Milliken was successful achieving the dismissal of the claims for principal amounts due for the defeasance, mechanical units, and roof repair claims at summary judgment, CCP was successful in establishing liability for the vast majority of claims and the most important and valuable claims.

CCP is the prevailing party because it was successful on the vast majority of claims. CCP established that Milliken was liable for the mezzanine repairs, phase-two repairs, tilt-up wall repairs, rent abatement, property taxes, loading dock repairs, late fees, and attorneys' fees. In contrast, Milliken was only successful with achieving the dismissal of the defeasance claim, roof repair claim, and mechanical units claim. Additionally, Milliken's accomplishments in this lawsuit are somewhat diminished because: (1) CCP voluntarily withdrew the defeasance claim early in this litigation; (2) CCP presented minimal evidence for its roof-repair claim which was dismissed at summary judgment; and (3) Milliken did not assert any substantive counterclaims against CCP.[204]

Milliken was not the prevailing party because it failed in its defense against the most important claims: mezzanine repairs, tilt-up repairs, phase 2 repairs, and attorneys' fees. Milliken

---

[202] *Anderson & Karrenberg*, 289 P.3d at 603.

[203] *Anderson & Karrenberg*, 289 P.3d at 604; *see also R.T. Nielson Co. v. Cook*, 40 P.3d 1119, 1127 (Utah 2002).

[204] Milliken did request reasonable attorneys' fees under the reciprocal fee statute in the late pretrial phase.

claims it "successfully defended" against the mezzanine repairs, tilt-up repairs, phase 2 repairs because it paid more than $800,000 (i.e., almost 100% of the damages associate with these claims) prior to the initiation of this litigation.[205] Milliken is mistaken that the partial payments make it the prevailing party. While Milliken paid almost 100% of the damages associated with these claims, it did so with the incessant prodding and deep explanations from CCP's lawyer. Milliken specifically disclaimed any waiver, settlement, or compromise limitations which left open the issue of attorneys' fees associated with these claims. This means that Milliken subjected itself to a claim of more than $900,000 in attorneys' fees by making CCP establish liability for the mezzanine repairs, tilt-up repairs, phase 2 repairs, attorneys' fees, and other claims at trial. CCP was the prevailing party.

CCP is also the prevailing party because it was successful in winning the most valuable claim (i.e., its attorneys' fees claim under Section 29 of the Lease Agreement). Milliken has used varying arguments, including misconstructions of the Lease Agreement, to resist the concept of liability for attorneys' fees.[206] Milliken repeatedly returned to these arcane interpretations of the Lease Agreement, exacerbating CCP's fees. And as to the amount, CCP requested $939,306.90 in attorneys' fees as of December 12, 2024. The recoverable fee award was reduced by $1,750.00 in Section IV. C. of this order to ensure that CCP did not recover attorneys' fees for unsuccessful claims. However, Milliken was unable to reduce CCP's recoverable fee award through any other theory, and CCP was able to establish it was entitled to recover $937,556.90 in

---

[205] Milliken Motion at 21-22 ("Milliken successfully defended against $1,129,309.31 of CCP's claims, and CCP only recovered $20,568.44 in unpaid Phase 2 repairs.").

[206] *See* issues resolved in Memorandum Decision and Order Denying Milliken's Motion in Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees and Granting [71] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs, docket no. 111, filed June 4, 2024.

attorneys' fees from Milliken. For these reasons, CCP was the prevailing party in this litigation, and Milliken is not entitled to utilize Utah's reciprocal fee statute.

### J.   CCP established it is entitled to attorneys' fees under the terms of the Lease Agreement

Milliken argues CCP is not entitled to attorneys' fees because of Milliken's interpretation of the Lease Agreement. The attorney's fee provision in Section 29 of the Lease Agreement states:

> In the event Landlord places the enforcement of all or any part of this Lease in the hands of an attorney on account of Tenant's default, Tenant agrees to pay Landlord's cost of collection, including reasonable attorney's fees, whether suit is actually filed or not. [207]

The interpretation of the attorney's fee clause was set forth at length in an order on a motion in limine. [208] The parties were construing the clause in a convoluted fashion contrary to its clear meaning. All of Milliken's clause interpretation arguments were rejected in that order. This order will not change the correct interpretation of the clause.

First, Milliken says CCP is only able to recover attorneys' fees incurred as part of "cost of collection" of sums actually paid out by CCP to cure lease defaults. [209] There is nothing in this clause that requires CCP to pay out funds to cure lease defaults. The Findings of Fact and Conclusions of Law state:

> The phrase "costs of collection" does not limit attorney's fees and costs to costs incurred in collection of monetary sums in context of a lawsuit, but must be read with the predicate trigger for attorney's fees liability – placing enforcement of any default of the Lease covenants or agreements in the hands of an attorney. [210]

---

[207] Lease Agreement at 8 (emphasis added).

[208] Memorandum Decision and Order Denying Milliken's Motion in Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees and Granting [71] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs, docket no. 111, filed June 4, 2024.

[209] Milliken Motion at 28-29.

[210] FFCL ¶31 at 117.

Enforcement may result in collection of funds, as this case adjudges, but enforcement may result in forcing the defaulting party to pay funds. Milliken has paid $681,419.86 as a result of work of CCP's lawyers.

Continuing with its restrictive view of the clause, Milliken argues the attorney-fee provision cannot allow CCP to recover fees for merely enforcing the Lease Agreement, securing an interpretation of the Lease Agreement, or seeking injunctive relief.[211] This would be a very hollow clause if enforcement, interpretation, and preliminary relief were excluded. How would a party collect sums without interpretation and enforcement? As the order already deciding this issue stated, "[t]he entitlement to recover fees is conditioned on placing the enforcement of the Lease Agreement in the hands of an attorney on account of Tenant's default."[212]

Milliken also argues, again, for the interpretation rejected in the prior order. Milliken says that before that order, the parties consistently interpreted the interaction of the Lease Agreement's Section 16 and Section 29 to mean that before CCP could recover attorneys' fees there must be: (a) a default by Milliken under Section 16; (b) a notice from CCP to Milliken; an opportunity for Milliken to cure the default during a waiting period; and (d) the expenditure of money by CCP on repairs that were both Milliken's responsibility and the subject of the notice CCP.[213] All of these arguments were rejected in the previous order.[214]

---

[211] Milliken Motion at 29.

[212] Memorandum Decision and Order Denying Milliken's Motion in Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees and Granting [71] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs at 8, docket no. 111, filed June 4, 2024.

[213] Milliken Motion at 30.

[214] Memorandum Decision and Order Denying Milliken's Motion in Limine No. 6 to Exclude Plaintiff's Claim for Attorneys' Fees and Granting [71] Motion in Limine Re: Plaintiff's Attorneys' Fees and Costs at 5-8, docket no. 111, filed June 4, 2024.

CCP established it is entitled to attorneys' fees under the terms of the Lease Agreement because Milliken was in default and CCP placed this enforcement in the hands of an attorney.

### K.  CCP is entitled to recover its costs under Federal Rule of Civil Procedure 54(d)(1) and Section 29 of the Lease Agreement, and Milliken is not entitled to recover its costs

CCP claims $58,723.40 in costs under Section 29 of the Lease Agreement and Federal Rule of Civil Procedure 54.[215] Milliken argues it is entitled to recover $17,108.90 in costs as the prevailing party under Federal Rule of Federal Rule of Civil 54.[216]

Federal Rule of Civil Procedure 54(d)(1) states:

(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.[217]

CCP may recover its $58,723.40 in costs under Rule 54(d)(1) because CCP is the prevailing party for the reasons mention in Section IV. I., and Milliken may not recover its costs because Milliken was not the prevailing party. Another basis for CCP to recover its costs is Section 29 of the Lease Agreement which provides that "Tenant agrees to pay Landlord's costs of collection . . . ."[218] Milliken made no objections to the items on CCP's Bill of Costs.

---

[215] CCP Motion at 36; Affidavit of J. Gregory Hardman in Support of Plaintiff's Motion for Attorney Fees and Costs (Phase 2 Trial Brief); and Bill of Costs docket no. 186-2, filed December 17, 2024, as Exhibit 1 with Exhibit 1-A at 16-33, printout of law firm costs; Exhibit 1-B at 35-78 associate counsel law firm costs; and Exhibit 1-C at 79-143, fees of the clerk of court.

[216] Milliken Motion at 28 and Bill of Costs and exhibits attached as Exhibit 3 at 148-171 to the Affidavit of Kristine M. Larsen in Support of Defendant's Post Trial Motion for Attorneys' Fees and Costs, docket no. 189-5, filed January 16, 2025.

[217] Fed R. Civ. P. 54(d)(1).

[218] Lease Agreement at 8.

## V.    ORDER

IT IS HEREBY ORDERED that CCP's Motion for Attorneys' Fees is GRANTED IN

PART and DENIED IN PART, and Milliken's Motion for Attorneys' Fees is and DENIED.

1.    CCP's motion.[219] for $939,306.90 in attorneys' fees is GRANTED in part and

DENIED in part. CCP is awarded $937,556.90. CCP's request was reduced by five hours and

$1,750.00 because these fees were incurred in furtherance of unsuccessful claims.

2.    CCP's request for $58,723.40 in costs under Federal Rule of Civil Procedure

54(d)(1) and Section 29 of the Lease Agreement is GRANTED.

3.    Milliken's motion.[220] for attorneys' fees and costs is DENIED.

4,    CCP shall submit the form of judgment to Milliken within seven days and to the

court within fourteen days.

Signed February 8, 2025.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[219] Trial Phase 2: Plaintiff's Motion for Attorney Fees and Costs and Supporting Memorandum ("CCP's Motion"), docket no. 186, filed December 17, 2024.

[220] Trial Phase 2: Defendant's Brief on Phase 2 Trial Issues and Motion for an Award of Attorney Fees and Costs under Utah Code Ann. §78B-5-826 ("Milliken's Motion"), docket no. 189, filed January 16, 2025.